Judgment of reversal.

---

### VANDERHEYDEN *against* YOUNG.

In *a plea* of justification, in an action of trespass, assault and battery, and false imprisonment, brought by a *militia* man of the state, employed as a soldier in the service of the *United States,* against the president of a court martial, it is not necessary to allege that a case had occurred which gave authority to the President of the *United States* to call forth the militia of the states, under the act of congress of the 28th *February,* 1795, ('*Cong.* 3. sess. 1. c. 91.)

THIS was an action of trespass, assault and battery, and false imprisonment. The declaration contained two counts. The defendant pleaded, 1. Not guilty; 2. A special plea, in bar to the *first* count, stating that before the time when, &c. to wit, on the 15th *September,* 1812, at, &c. *Daniel D. Tompkins,* Esq. governor of the state, &c. upon application of, and conformable to directions and by authority of, the President of the *United States,* and pursuant to the act of congress passed the 28th of *February,* 1795, ordered into the public service of the *United States* a portion of the militia of the state of *New-York,* and for that purpose issued his orders, as such commander in chief, dated 15th *September,* 1812, whereby the officers, non-commissioned officers, musicians and privates of Captain *Higbee's* company of light infantry of *Troy,* were ordered to rendezvous at, &c. on the 18th *September,* in the same year, and from thence to march to *Plattsburgh,* there to receive and obey the orders of Brigadier General *Bloomfield,* the commandant of the military force there employed in the service of the *United States ;* in pursu

The President of the *United States,* alone, is made the judge of the happening of such event and he acts upon his responsibility under the constitution.

Nor is it necessary to allege what president, by name, issued his orders to the governor of the state, to order into the service of the *United States* a portion of the militia of the state, nor the number of militia ordered out.

Nor is it necessary to allege that the officers composing the court martial were in the service of the *United States :* nor that the general who ordered the court martial commanded in the arm of the *United States* when he issued the order, or approved the sentence of the court.

The *militia* of the states, ordered into the service of the *United States,* under the act of the 28th *February,* 1795, are subject to the rules and articles of war of the *United States,* though made subsequent to that act, which is prospective

Whether a *militia* man ordered into the service of the *United States,* under that act, is liable be arrested, tried and punished, for desertion, &c. after his term of service has expired ? *quære.*

A court martial, under the *United States,* constituted to try delinquent *militia* men, sit as judge and where a party arrested waives all objection to the jurisdiction of the court, by pleading guilt he cannot afterwards allege that the court had no jurisdiction. The party aggrieved by the senten of the court martial, which has no power to carry the sentence into execution, must apply for r dress to the commanding officer, to whose revision all the proceedings of the court are subject, a who is to order the execution of the sentence.

Where the court has jurisdiction of the person of the delinquent and of the subject matter, th are not answerable for their sentence, in an action at the suit of the party.

ance of which orders, Captain *Higbee's* company, of which the plaintiff was a private, did rendezvous at, &c. and afterwards, to wit, on the same day did march with and under the command of the said Captain *Higbee* to *Plattsburgh*, where they were stationed, and continued in the service of the *United States*, under the command of General *Bloomfield*, until the 30th of *September* in the same year, when the plaintiff, without the leave or license of any or either of his superior officers, deserted and ran away to places unknown, without being discharged, and his time of service not having ended. That after the plaintiff's desertion, and before the assaulting, &c. is supposed to have been done, to wit, on the 16th *January*, 1813, Major General *Dearborn*, by general orders of that date, appointed a general court martial, composed of militia officers of the state of *New-York*, consisting of the defendant, being a major in the militia, *Ira Gale, Oliver Lyon*, and —— *Moss*, jun. captains, and *Lucas Goes, William L. Marcy*, and *Henry Spear*, lieutenants, and directed the said court martial to proceed to the trial of all such persons, within the counties of *Rensselaer, Columbia* and *Washington*, as had been lawfully ordered into the military service of the *United States*, during the year 1812, and had refused or neglected to obey such orders, or to perform the duties required of them, and to convene at the city of *Hudson* on *Monday*, the 1st of *February*, and to adjourn to one or more places within the limits of the said counties at the discretion of the court; He the said *Henry Dearborn*, having competent jurisdiction, power and authority to issue said orders, and to appoint the said court martial in the manner and form aforesaid.) That the court convened on the said 1st of *February*, at the city of *Hudson*, and proceeded to the trial of all such persons, &c. and adjourned from day to day, until the 3d of *February*, at the city of *Hudson*, the said court being then and there sitting and holden, of which the defendant was president, a charge was exhibited against the plaintiff for deserting on the 30th *September* as above stated, and the said plaintiff being in court, voluntarily pleaded guilty to the said charge and put himself upon the mercy of the court, and the said court having competent jurisdiction, power, and authority to take cognizance of the offence charged against the plaintiff, and to hear, try, and determine the same, did, as such court, and not otherwise, adjudge and sentence the plaintiff for the offence aforesaid, to pay a fine of 75 dollars, and be

NEW-YORK,    imprisoned one month, and to remain in prison until the fine be
May, 1814.   paid; and, as such court, did cause the plaintiff to be placed
VANDERHEYDEN under guard, using no more force than was necessary to detain
    v.       him confined under guard, until afterwards, to wit, on the 7th
YOUNG.       of *February*, the record of the proceedings being in due form of
law transmitted to the said *Henry Dearborn*, who, as major
general, approved the sentence. And the defendant averred that
from the time of issuing the orders by the governor, until the
time that the sentence of the court was approved of, the plaintiff
continued to be one of the persons, to wit, a private in the mi-
litia, within the counties of *Washington, Rensselaer*, and *Colum-
bia*, and as such had been lawfully ordered into the military
service of the *United States*, in the year 1812, by virtue of the
act of congress of the 28th of *February*, 1795, which is the
same assaulting, &c.   And this he is ready, &c.

3. Another special plea in bar to the first count, stating that
before, &c. to wit, on the 18th of *September*, 1812, the said
plaintiff, being a private soldier within the county of *Rensselaer*,
in a company of light infantry commanded by Captain *Benjamin
Higbee*, was, among others, by virtue of the act of congress of
the 28th of *February*, 1795, entitled " An act to provide for
calling forth the militia to execute the laws of the union, sup-
press insurrections and repel invasions, and to repeal the act now
in force for those purposes," called forth, in pursuance of orders
issued by the president to *Daniel D. Tompkins*, Esq. governor,
and was actually employed in the service of the *United States*,
and did actually rendezvous at the village of *Troy* on the said
18th of *September*, 1812, and from thence [that time] continued
to be employed in the service of the *United States* as such pri-
vate, and marched to *Plattsburgh*, and there continued in such
employment and service until, &c. he deserted, &c. whereby he
became subject to be tried and punished by a court martial,
according to the laws of the *United States*.   That after the
plaintiff's desertion, and before the assaulting, &c. to wit, on the
3d of *February*, 1813, at a general court martial, composed of
militia officers, held at *Hudson* before the defendant, &c. the
defendant being a major and president of the court, and *Ira
Gale, &c.* being captains and members of the court, and *Lucas
L. Goes, &c.* being lieutenants and members of the court, which
court was, on the 16th of *January*, 1813, duly constituted by
Major General *Dearborn*, by general orders, bearing date the

said day, he having competent power, &c. by which orders the said court was directed to try all persons within, &c. and who had refused, &c. and the said plaintiff was charged with the crime of desertion by him committed on, &c. and being so charged in proper person, came into the said court and pleaded guilty, and put himself upon the mercy of the court, who did convict and adjudge the plaintiff guilty, and did, as such court martial, and not otherwise, sentence, &c. the said court martial having competent jurisdiction to take cognizance of such offence and try, convict and punish the plaintiff for the same. And that the said court, of which the defendant was president, did, as such court martial, and not otherwise, on the conviction aforesaid, order, &c. which was lawful for the said court to do for the cause aforesaid, until afterwards, to wit, on the 7th of *February*, the record, &c. was transmitted to the said *H. Dearborn*, who, as major general, approved the sentence, and which is the same assaulting, &c. And this he is ready, &c.

4. A third special plea in bar to the first count, stating that by an act of congress, entitled an act, &c. passed 28th *February*, 1795, it was, among other things, enacted as follows: that the militia employed in the service of the *United States* shall be subject to the same rules and articles of war as the troops of the *United States:* that after the passing the said act and before, &c. to wit, on the 30th *September*, 1812, the said plaintiff, being one of the militia of the state of *New-York*, was, at *Plattsburgh*, in due form of law, pursuant to, and by virtue of, the said act, employed as a private, among others, in the service of the *United States*, thereby became subject to the same rules and articles of war as the troops of the *United States*. That by another act of congress, passed the 10th *April*, 1806, entitled "An act for establishing rules and articles for the government of the armies of the *United States*," it was, among other things, enacted as follows: "all officers and soldiers who have received pay, or have been duly enlisted in the service of the *United States*, and shall be convicted of having deserted the same, shall suffer death, or such other punishment as by a court martial shall be inflicted." That after the passing of the said acts, and before, &c. on the 30th *September*, 1812, at *Plattsburgh*, the said plaintiff being employed in the service of the *United States*, without the leave or license, privity, or consent of, &c. deserted, &c. whereby he

became liable to be tried, convicted, and punished for the said offence. That after the said 30th of *September*, and the desertion, &c. and before, &c. to wit, on the 3d of *February*, 1813, at *Hudson*, at a general court martial composed of militia officers of the state of *New-York*, ordered by, &c. then and there having competent jurisdiction, &c. and which court was composed of the defendant, being a major, &c. the said plaintiff was tried and convicted of the crime of desertion, upon the confession of the said plaintiff, in open court, of the crime of desertion aforesaid as above stated: whereupon the said court, of which the defendant was president, as such court, and not otherwise, did adjudge, &c. the said court having competent jurisdiction, &c. (as in the third plea to the end.)

The 5th, 6th, and 7th special pleas in bar to the second count, were merely a repetition of the special pleas to the first count.

The plaintiff demurred to the special pleas to both counts, and assigned the following causes of demurrer:

1. That it is not alleged in either of the said pleas that the *United States* were invaded, or in imminent danger of invasion, from any foreign nation or *Indian* tribe; nor that the laws of the *United States* were opposed, or the execution thereof obstructed, in any state:

2. That it is not alleged when or where, or in what manner, the President of the *United States* issued his orders to the governor of this state, to order into the public service of the *United States* a portion of the militia of this state; nor is it alleged which of the Presidents of the *United States* issued such orders to the governor of this state, nor what number of the militia of the state were ordered into the service of the *United States*, by authority of the president:

3. That it is not alleged that the plaintiff was one of the militia of this state, employed in the service of the *United States*, at the time when General *Dearborn* issued his orders for calling the court martial, on the 16th of *January*, 1813; nor that the time for which the plaintiff was liable to be employed in the military service of the *United States*, had not expired previous to issuing such orders; nor that the plaintiff had not been discharged from the military service of the *United States*, when employed as a private in the militia, &c.

4. That it is not alleged that General *Dearborn* ever ordered the pretended sentence of the court martial to be executed,

Other objections to the pleas were also raised by the plaintiff, on the argument of the cause: 1. That it is not alleged that General *Dearborn*, when he ordered the court martial, commanded an army of the *United States*, or had any command whatever in such army.

2. That it is not alleged that the defendant was ever employed in the service of the *United States*, as a major of the militia of this state.

3. That it is not alleged that General *Dearborn* was commanding officer of an army of the *United States*, for the time being, or that he had any command whatever in the army, when he approved of the sentence of the court martial.

4. That it is not alleged that the defendant was ever ordered to place the plaintiff under guard, or to imprison him.

5. That the rules and articles of war set forth in the last plea to each count, were not enacted by the congress of the *United States*, until long after the passing of the act of the 28th of *February*, 1795, to wit, not until the 10th of *April*, 1806.

6. That it is not alleged that the President of the *United States* ever issued his orders for calling forth any portion of the militia of the state of *New-York* into the service of the *United States*.

The cause was argued by

*Paine*, for the plaintiff; and

*J. Russell*, contra.

The *plaintiff's* counsel, to show that an action would lie against an officer of the court martial, cited *Mostyn* v. *Fabrigas.* (*Comp.* 161. 169.) *Rafael* v. *Verelst.* (*W. Bl.* 983.)

As to the jurisdiction of the court martial, which appeared to be the principal point in the case, he contended that the *fourth* section of the act of congress, passed the 28th of *February*, 1795, (cong. 3. sess. 1. c. 91.) declaring that the *militia* employed in the service of the *United States* shall be subject to the same rules and articles of war as the troops of the *United States*, had reference only to the rules and articles of war then in existence, and not to such as may have been subsequently made, in the year 1806. The word employed must be taken

and understood to mean, while *actually* employed, or in actual service. A person in the militia cannot be subject to punishment after the time of his service has expired. If he were so, how long after the expiration of the term of service is he liable? Is it for an indefinite period? Can he be tried and punished, after he has returned home, has married, perhaps, and has a family? The act of congress of the 11th of *January,* 1812, to raise an additional military force, (cong. 12. sess. 1. c. 14. s. 16.) which provides that a deserter from the service of the *United States* may be tried by a court martial, and punished, although his term of enlistment had elapsed previous to his arrest, shows the sense of congress, that without such special regulation, a soldier could not be tried or punished after his term of service had expired.

For the *defendant* it was insisted, that the court martial was not a court of *inferior* jurisdiction, though it was *limited* as to place, and as to the subject matter, or persons to be tried. The only question is, whether the plaintiff was subject to the jurisdiction of the court martial. The court proceeded under the authority of the act of congress of the 28th of *February,* 1795. The plea states, and the fact is admitted by the demurrer, that the plaintiff was *employed* in the service of the *United States*. As soon as he was employed, he became liable to the rules and articles of war. The act is prospective; it relates to persons when employed, or for the time being. The rules and articles of war, in 1806, are the same as those which were in force in the year 1795. The latter (art. 1. s. 6. See *Graydon's Digest, Appendix,* 146.) declare that all officers and soldiers, who, having received pay, or having been duly enlisted in the service of the *United States,* who shall be convicted of deserting, shall suffer death, or such other punishment as a court martial may inflict. So by art. 1. s. 17. (*Graydon's Digest, Appendix,* 156.) militia men, *mustered and in pay,* and joined or acting with the regular forces of the *United States,* are to be governed by the rules and articles of war, and subject to be tried by court martial, in the same manner as the regular forces, except that the court martial is to be composed of militia officers. To the same effect is the 97th article of the rules of war, established by the act of congress of the 10th of *April,* 1806. (Cong. 9. sess. 1.) Lapse of time will not oust the court martial of its jurisdiction,

if no time is fixed; but by the 88th article of the rules of war, there is a limitation fixed for such trials to two years after the offence committed. The plaintiff was amenable to the court when it was ordered to be held. A court of limited jurisdiction, acting within its jurisdiction as to place and the subject matter, cannot be made liable to an action. The court could not know who were ordered into the service of the *United States,* until the person accused was tried. That was to be ascertained at the trial. The plaintiff made no objection to the jurisdiction of the court martial.

Again, the court martial merely pronounces judgment; the sentence is to be reviewed and executed by the commander in chief, to whom all their proceedings are to be reported, and who, if he approves them, confirms the sentence, and orders it to be executed. The plaintiff, then, if he was aggrieved by the proceedings of the court martial, should have applied to General *Dearborn,* and made his objection. That was his remedy.* The case of *Mostyn* v. *Fabrigas (Comp.* 172.) shows that a court of limited jurisdiction is not liable to this action, but the party aggrieved should apply to the superior court of review, having power to correct the proceedings of which he complains. A court deciding a question within its jurisdiction, can never be liable for their decision. While it remains unreversed, it is final and conclusive.†

* *Bonnell* v. *Brighton,* 5 *Term Rep.* 182.

† 1 *Salk.* 396. 1 *Ld. Raym.* 467.

SPENCER, J. delivered the opinion of the court. The first and second objections to the pleas are wholly untenable. It is not necessary to allege that a case had occurred which gave authority to the President of the *United States* to call forth the militia, under the act of the 28th of *February,* 1795. That act, after enumerating the cases, on the occurrence of which the militia may be called into the public service of the *United States,* vests in the president a high discretionary power: he, and he alone, is made the judge, as well of the happening of the events, on which the militia may be called forth, as of the number, time, and destination of that species of force. In every case in which the president acts under that law, he acts upon his responsibility under the constitution.

If it was necessary to the validity of these pleas to state, either that the *United States* were invaded, or in imminent danger of invasion, or that the laws of the *United States* were op-

NEW-YORK, posed, or the execution thereof obstructed, the matter thus sta-
May, 1814. ted would be issuable, and the plaintiff might, in his replication,
VANDERHEYDEN take issue on them, and oblige the defendant to prove the oc-
v.
YOUNG. currence of a case specified in the act; and thus every subor-
dinate officer, who should be called into service, would be put
to the necessity, when he was sued for any act of discipline
upon the privates, to prove to a jury that the president had
acted correctly in making his requisitions; and if he failed in
this proof, it would subject him to damages for an act otherwise
lawful.

To countenance such a construction of the act, would be
monstrous. Every trial would either subject all the archives of
state to an examination before the court and jury, or the de-
fendant would inevitably be found guilty. No man would dare
to obey the orders, either of the president, or of his superior offi-
cer, lest, peradventure, the president had either abused his autho-
rity, or misjudged, in relation to the occurrence of the fact
which authorized him to call forth the militia.

It is a general and sound principle, that whenever the law
vests any person with a power to do an act, and constitutes him
a judge of the evidence on which the act may be done, and, at
the same time, contemplates that the act is to be carried into
effect, through the instrumentality of agents, the person thus
clothed with power is invested with discretion, and is, *quoad*
*hoc,* a judge. His mandates to his legal agents, on his declaring
the event to have happened, will be a protection to those agents,
and it is not their duty or business to investigate the facts thus
referred to their superior, and to rejudge his determination. In
a military point of view, the contrary doctrine would be sub-
versive of all discipline; and as it regards the safety and security
of the *United States* and its citizens, the consequences would be
deplorable and fatal. It was not necessary, therefore, to set
forth the occurrence of these events in the pleas, as a justifica-
tion of the defendant's conduct, because they were not, and
could not, be matter of trial.

The objection that the governor's order does not mention
which president gave the order to him, nor what number of
militia was called out, is too refined and idle to require exami-
nation.

The third objection is also untenable. Court martials for the
trial of militia officers or privates, are to be composed of mili-
tia officers. (97th article of rules and articles of war.) It is

not a superadded qualification that such officers shall have been in the service of the *United States*.

The objections that the pleas do not allege that General *Dearborn*, when he ordered the court martial, commanded the army of the *United States*, or that he ordered the sentence to be executed, are not well taken. The plea states that General *Dearborn*, when he issued the order, was a major general of the army of the *United States;* and this imports that he then commanded the army; but, under the act of 1795, it is not required that courts martial should be ordered by a general commanding an army. The 65th article gives to the officer ordering the court the power of confirming and executing the sentence; but it does not prescribe the manner of doing either; and from analogy to all other courts of criminal jurisdiction, it necessarily follows, that the court before whom the trial is had, has the power, after conviction, of keeping the person of the delinquent, until the will and pleasure of the superior officer be known.

It is also objected that the plaintiff was not subject to the rules and articles of war, because they were enacted in 1806, and posterior to the act authorizing the president to call out the militia.

The 4th section of the act of the 28th of *February*, 1795, provides that the militia employed in the service of the *United States*, shall be subject to the same rules and articles of war as the troops of the *United States*. The act of the 10th of *April*, 1806, establishing the rules and articles of war, ordains, that from and after the passing that act, the rules and articles therein shall be the rules and articles by which the army of the *United States* shall be governed. It follows, necessarily, then, that these rules and articles attached to the militia which were called into the service of the *United States* thereafter, without reference to the time when the power to call them out was conferred; and this independently of the 97th article, which actually extends the rules to the militia. The act of 1795 is clearly prospective.

The only remaining objection is, that the pleas do not state that the plaintiff's term of service was unexpired when he was tried and sentenced, and put under guard.

Without examining the question whether the plaintiff was liable to be tried, after the period for which he was called out had elapsed, we are clearly of opinion that the defendant is not liable to this action.

The court martial was constituted to try all the delinquent militia men in three counties, and the defendant was personally and regularly before the court, and charged with the offence of desertion. The defendant, and the other members of the court, were sitting as judges. It was competent to the plaintiff to have raised the objection under consideration, or any other but he waived every objection by pleading guilty, and throwing himself on the mercy of the court. (*Comp.* 172.). After this can he be permitted to turn round upon the court, and pretend that he was not liable to their jurisdiction? Had he urged the objection, it might have availed him; but his plea admits their jurisdiction, and his own guilt. Besides, the court martial had not power to carry any sentence into execution. Their proceedings were liable to the review of General *Dearborn* and there he should have resorted with his exculpatory proof (5 *Term Rep.* 182. 6 *Term Rep.* 243.)

The distinction taken by Justice *Wilson*, in *Drewy* v. *Coulton*, (1 *East*, 56. in the notes,) is a very sound one. " In very few instances," he says, " is an officer answerable for what he does to the best of his judgment, in cases where he is compellable to act; but the action lies where the officer has an option whether he will act or not." If the court martial had jurisdiction over the person of the plaintiff, and over the subject matter, (his offence) then, most clearly, the members of that court are not answerable. (1 *Ld. Raym.* 467.) The plaintiff admitted both facts, by submitting to the jurisdiction of the court and pleading guilty. I will only add, that it would be most mischievous and pernicious, to subject men acting in a judicial capacity, to actions, where their conduct is fair and impartial when they are uninfluenced by any corrupt or improper motives, for a mere mistake of judgment.(*a*) In the present case they are called in question by a person who, by acknowledging the jurisdiction of the court and his own guilt, never required them even to deliberate on any of these points or objections.

VAN NESS, J. *dissented.*

PLATT, J. not having heard the argument, gave no opinion.

Judgment for the defendant.

(*a*) See *ante,* p. 114. *Jenkins and others* v. *Waldron.*