SMITH (GREELEY v.). See Cases Nos. 5,-747 and 5,748.

SMITH (GREELY v.). See Cases Nos. 5,749 and 5,750.

———

## Case No. 13,053.

### SMITH v. HAMMOND.

[Hoff. Op. 532.]

Circuit Court, N. D. California. 1854.

SHIPPING — REGISTRY LAWS — REPEAL — SALE TO FOREIGNERS—REPURCHASE—MISCONDUCT OF COLLECTOR—LIABILITY FOR DAMAGES.

[1. The act of March 27, 1804 (2 Stat. 296), taking away the privileges of American ships from vessels owned by naturalized citizens who continued to reside for a certain time in foreign countries, but which further provided that nothing therein contained should prevent the registering anew of vessels before registered, in case of a sale thereof to American citizens, did not repeal the act of June 27, 1797 (1 Stat. 523), which denied registry to American vessels captured and condemned by a foreign power, etc., even if they again became American property.]

[2. The act of June 27, 1797, which declares that no registered American vessel "seized or captured, and condemned under the authority of any foreign power, or that shall by sale become the property of foreigners," shall thereafter be permitted to receive a new register although she again becomes American property, does not apply to American vessels sold at private sale to foreigners, and again repurchased by Americans; and such vessels are entitled to be registered anew.]

[3. A collector who wrongfully refuses to re-register a vessel which, being originally American, was sold to a foreigner, and then again purchased by an American, is not personally liable in damages, when his refusal is based on an honest mistake in the construction of the law.]

[This was an action at law by Smith against Hammond, collector of the port, to recover damages for his refusal to grant a certificate of registry to a certain vessel.]

HOFFMAN, District Judge. This action is brought against the defendant, collector of this port, to recover damages for a refusal by him to grant a certificate of registry to a certain vessel alleged to be entitled thereto. The ship in question is an American vessel, and has been heretofore registered. Her former American owner sold her, however, to a foreigner, by whom she has been resold to her present owner, an American citizen. During the whole time that she continued to be the property of her foreign owner she remained in this port, and was used as a storeship; but her American owner now desires a certificate of registry, in order that she may be sent to sea and enjoy the privileges of an American vessel. It is not suggested that the refusal of the collector proceeds from malice, caprice,

or willfulness; but it is founded solely on the construction given by him to the registry laws, under which, as he considers, the vessel is not entitled to be registered anew. It is said that the department concurs with him in the view taken of the statutes.

Under these facts two questions arise: 1. Is the vessel entitled to be registered anew? 2. If she be, is the collector, under the circumstances, personally liable for damages occasioned by his refusal to register?

1. The provision of the statute which, in the opinion of the collector, prohibits the registering anew of the vessel, is as follows: "Be it enacted, that no ship or vessel which has been or shall be registered pursuant to any law of the United States, and which hereafter shall be seized or captured, and condemned under the authority of any foreign power, or that shall by sale become the property of a foreigner or foreigners, shall, after the passing of this act, be entitled to, or capable of receiving a new register, notwithstanding such ship or vessel should afterwards become American property, but that all such ships or vessels shall be taken and considered to all intents and purposes as foreign vessels: provided, that nothing in this act contained shall extend to or be construed to affect the person or persons owning any ship or vessel at the time of the seizure or capture of the same, or shall prevent such owner, in case he regain a property in such ship or vessel so condemned by purchase or otherwise, from claiming and receiving a new register for the same, as he might or could have done if this act had not been passed." Act June 27, 1797.

It is contended by the counsel for the plaintiff that this act is repealed by the proviso to the first section of the act. of March 27, 1804. But to this construction of that section I am unable to assent. Independently of the fact that the section does not refer in any manner to the act of 1797, but purports to amend an entirely different act, that of 1792 [1 Stat. 287],—and should therefore be construed, if possible, so as to give efficacy to the statutes. I do not see that its language admits, still less demands, the construction sought to be put upon it by the plaintiff's counsel. The object of the law was to take away the privileges of American ships from all vessels owned by naturalized citizens who have continued to reside for a certain time in foreign countries, unless such resident be a consul or public agent of the United States. The proviso merely enacts "that nothing herein contained"— that is, in the enactment just recited—"shall prevent the registering anew of any ship or vessel before registered in case of the sale thereof to any citizen or citizens resident in the United States." The object and effect of this law are apparent: To deprive the ship of her American privileges while owned by a nonresident naturalized foreigner, but to restore her to those privileges whenever she passed into the hands of a resident citizen. This was the whole intent of the law, nor can I perceive that it, either in terms or by implication, repeals the law of 1797, which applies to a different case, and was intended to accomplish a different object. But the inquiry presents itself,—an affirmative answer to which seems to have been assumed,—does the act of 1797 prohibit the registering of a ship in the situation of the plaintiff's vessel? In my opinion, it does not. If the operation of that act be to deprive forever every American vessel which may, for no matter how short a period, have become the property of a foreigner, of all right to be restored to American privileges, though she may afterwards be owned by a citizen, it is difficult to conjecture the motive of the law. The policy of the registry law is to give certain advantages to American built and American owned vessels. Vessels in the situation of the plaintiff's ship satisfy both these conditions. What motive can be assigned for depriving a ship—belonging to the very class which the laws intended to protect —of all her privileges for the seemingly insufficient reason that during one period of her existence she may have been owned by a foreigner. If such be the law, not only is an American owner of an American built ship unreasonably deprived of an important privilege, but the value of the vessel in the hands of her original American owner is unnecessarily impaired, for the foreign purchaser will be unwilling to offer for her a price as high as he might have been ready to give if he were able to dispose of her to some American vendee, in whose hands she would regain her national character. If the object of the act were to denationalize forever all American vessels sold to foreigners, it would seem that enrolled vessels are at least as much within its policy as registered vessels; and yet the first clause of the act only mentions "vessels which have been or shall be registered," and declares such vessels incapable of receiving a new register. But the strongest argument against the construction under consideration, is that derived from the terms of the proviso. The vessels referred to in the first clause of the section, are those "which shall hereafter be seized or captured, and condemned under the authority of any foreign power, or that shall by sale become the property of a foreigner or foreigners." These vessels were declared incapable of being re-registered by any American citizen. The proviso obviously was intended to make an exception in favor of the previous American owners. The exception in the proviso ought, therefore, to embrace the owners of all vessels included within the description in the general clause of the law. But if that description be construed to embrace vessels which have been sold at private sale to foreigners, the exception does not in terms extend to the owners of such vessels,—for the proviso only enacts "that nothing in the act contained shall extend to or affect the persons owning any ship or vessel at the time of the seizure or capture of the same, or shall prevent such owner, in case he regain a property

in such ship or vessel so condemned, from receiving a new register," etc. If the terms of this proviso be considered in connection with the foregoing enactment, to limit the operation of which it was introduced, it seems clear to me that the true intent of the statute was to embrace within its provisions only such vessels as might be seized or captured and condemned, or, by sale under the authority of any foreign power, become the property of a foreigner. By construing the word "or" to mean "and," in the last part of the clause descriptive of the vessels to which it was intended to apply, the meaning of the enactment would be unmistakable; and such a construction has sometimes been resorted to by courts in cases like the present, Douglass v. Eyre [Case No. 4,032]; Smith, Comm. 733; Cro. Eliz. 307,— and the same effect would be given to the statute if the order of the phraseology is inverted, and the words "under the authority of any foreign power" are placed after the word "sale." If such be the meaning of the statute its object and policy are at once apparent. Passed at a time when our commerce was continually the subject of spoliation, it was intended to provide that the ships so taken from us should in the hands of their captors have the least possible value; that the price, at which on condemnation they might be sold, should at least not be enhanced by the expectation on the part of the foreign purchaser, of subsequently selling her to an American citizen in whose hands she might regain her national privileges; and that as we were unable at that time to maintain our neutral rights inviolate, we would at least diminish as far as possible to foreigners the fruits of their spoliations. Under this view of the statute the proviso becomes expedient and consistent, for it secures to the former owner the advantage of being able to buy back his vessel at a diminished rate, as in his hands alone she regains her national privileges, and the effect of the injury he has suffered by her seizure and condemnation is thus mitigated so far as congress could effect that object. But if this act be construed to embrace vessels sold at a private sale to a foreigner, it is difficult to imagine why an exception should be introduced or a discrimination made in favor of the previous owner, for every consideration of policy would seem to apply to the vessel in his hands, as strongly as in those of any other American citizen. If the object of the law was to denationalize forever all vessels which might become the property of a foreigner, it is singular that the act did not say so in terms; and yet it speaks only of vessels which shall "by sale" become such property, leaving the case of vessels which may by gift or in any other mode become foreign property unprovided for; and yet there is as much reason for denationalizing such vessels as those which may be sold to a foreigner.

If then the statute be construed as prohibiting the registering anew of those vessels only which have by seizure, condemnation, or sale under the authority of any foreign power become the property of a foreigner, the next point for determination is, can this action be maintained against the collector for damages arising from the refusal to register, that refusal having arisen solely from a mistake in the construction of the law? I think that it cannot. In Drewe v. Coulton, 1 East, 563, note, Wilson, J., says: "This is in the nature of an action for misbehavior by a public officer in his duty. Now I think that it cannot be called misbehavior unless maliciously and wilfully done, and that the action will not be for mistake in law." In Jenkins v. Waldron, 11 Johns. 121, Spencer, J., says, for the whole court, "It would in our opinion be opposed to all the principles of law, justice and sound policy, to hold that officers called upon to exercise their deliberate judgments are answerable for a mistake in law, either civilly or criminally, when their motives are pure and untainted with fraud or malice." And the same views were expressed in Vanderheyden v. Young, 11 Johns. 160. The same doctrine was held in Wheeler v. Patterson, 1 N. H. 90, and in Seaman v. Patten, 2 Caines, 313–315, and it received the sanction of the supreme court, in Wilkes v. Dinsman, 7 How. [48 U. S.] 131, where all the cases above cited are referred to with approbation. This principle, thus firmly established, is decisive of the present case, as no doubt can, I think, be entertained of its applicability to it. The demurrer must therefore be sustained.