Nov. Term,
1860.

The Evansville, Indianapolis and Cleveland Straight Line Railroad Company v. The City of Evansville.

The Evansville, &c. Railroad Co. v. The City of Evansville.

Suit against the *City of Evansville*, upon a subscription to the stock of the railroad company. The contract of subscription was executed on behalf of the city by the mayor thereof; purported to have been made in pursuance of an order of the common council, and was conditioned : 1. That the company should receive the bonds of the city at par in payment of the subscription. 2. That the bonds thus issued were not to be convertible into stock, and were to be delivered concurrently with the delivery of the certificates of stock. 3. That said certificates of stock should bear interest at the rate of seven per centum, until the completion of the road to *Indianapolis*. 4. That the city might issue certificates for all taxes collected to pay the interest on said bonds, and that such certificates should be convertible into stock, upon presentation by the holder in sums of $50, which should bear interest until the road was completed to *Indianapolis*. It was averred in the complaint that one hundred thousand dollars of said bonds were issued by the city, and that said city voted by proxy in the elections of directors ; that the city had failed, on demand, to deliver the residue of said bonds, and thereby became liable to pay the amount thereof in money, &c.

By the charter of the *City of Evansville* the common council are authorized "to take stock in any chartered company for making roads to said city ; *provided* that no stock shall be subscribed or taken by the common council in any such company, unless it be on the petition of two thirds of the residents of said city, who are freeholders of said city, distinctly setting forth the company in which stock is to be taken, and the number and amount of shares to be subscribed; and *provided also*, that in all cases where such stock is taken, the common council shall have power to borrow money, and levy and collect a tax on real estate for the payment of said stock."

*Held*, that a railroad is such a "road" as is embraced in the terms of the charter.

*Held*, also, that the common council would have no power to subscribe at all, in the absence of the petition provided for in the charter, but when the power to subscribe is conferred by the petition, the mode in which it is to be exercised, as to the time and mode of payment, must necessarily be left, in a measure, to the discretion and judgment of the common council.

*Held*, also, that if the city received more favorable terms, as to time of payment, than other subscribers, it does not lie in her mouth, in order to defeat the subscription, to say that other stockholders were thereby defrauded.

*Held*, also, that as the city is expressly authorized to borrow money to pay for the stock subscribed, the power to determine the time of payment, and

Nov. Term.
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

to issue bonds and other evidences of indebtedness, is manifestly implied.

*Held*, also, that if the railroad company saw proper to receive the bonds, as cash, in payment of the subscription, instead of requiring the city to negotiate and raise the money upon them herself, the transaction was entirely proper, and not beyond the corporate powers of either the city or the company.

*Held*, also, that the power, conferred by her charter upon the city, to borrow money, carried with it the right to borrow wherever the money could be procured on the best terms, and, of course, the right to agree to pay where borrowed.

*Held*, also, that in the absence of any provision in the charter of the city, as to the interest she may pay on money borrowed, her contracts would be governed, in this respect, by the general law of the State, and would not be void for usury; and no good reason appears to the Court, why she may not legally agree to pay the interest allowed by the law of the State where her bonds are payable, though this last point is not decided.

*Held*, also, that there was nothing against the law, or public policy, in the agreement of the railroad company to allow the city interest on the stock subscribed by her.

*Held*, also, that as neither the railroad company, nor any of its stockholders, are complaining of the agreement by which stock was to be issued to the tax payers of the city, for the amount of taxes paid by them respectively, to meet the interest on the city bonds, the city can not avoid her subscription on the ground, that she obtained a stipulation which the railroad company were not authorized to make.

*Held*, also, that if this stipulation be regarded as void, it may be disregarded, and the contract enforced as far as it is valid.

*Held*, also, that § 8 of the general law for the incorporation of railroad companies (1 R. S., p. 412), which provides that the directors may make calls, &c., provided that such subscriptions shall not be required to be paid except in equal installments of not more than ten per cent. a month, has no application to cases where the times of payment are agreed upon in the contract of subscription, and the contract contemplates immediate payment, upon those terms.

*Held*, also, that the city is estopped by her contract with the railroad company to deny the legal existence of the corporation.

*Held*, also, that the city could not defeat the subscription, by setting up a parol condition, inconsistent with the terms of the contract of subscription.

*Held*, also, that though the contract of subscription, as made by the mayor, may have deviated, in some particulars, from the directions of the common council; yet the latter adopted and ratified it, as made, by ordering a portion of the bonds to be issued, in performance of it.

*Held*, also, that there was, in this case, no delegation by the common council, to the mayor, of authority, which, under the charter the council only could exercise; but that the council only acted through the mayor, as an

*amanuensis*, and not as a sub-agent. They *judged* for themselves, and they *acted* through the instrumentality of the mayor.

*Held*, also, that it was the duty of the common council to determine whether the requisite number of the freeholders of the city had petitioned for the subscription, no other tribunal having been provided for that purpose; and having passed upon that question, their determination is conclusive, unless it may be set aside in some direct proceeding for that purpose.

*Held*, also, that where the jurisdiction of an inferior Court depends upon a fact, which said Court is required to ascertain and settle by its decision, such decision is conclusive.

*Held*, also, that this principle is not limited to cases where the determination to be made is of a judicial character.

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

APPEAL from *Gibson* Circuit Court.

WORDEN, J.—This was a suit by the railroad company against the *City of Evansville*, upon a stock subscription. The complaint in the case was as follows, viz.:

"The *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, a corporation created by the laws of the State of *Indiana*, plaintiff, by *O. H. Smith*, her attorney, complains of the *City of Evansville*, defendant, and says that said defendant heretofore, to wit, on the 28th day of *May*, in the year 1853, by her certain subscription in writing, with full power to make the same, a copy of which is herewith attached and filed, subscribed to the capital stock of said railroad company, four thousand shares of fifty dollars each, making two hundred thousand dollars, upon the terms and conditions stipulated and expressed in said written subscription, which said subscription was, and is, in the words and figures following; that is to say:

"*Whereas*, The common council of the city of *Evansville*, on the 7th day of *May*, 1853, passed and adopted an order authorizing and empowering the mayor of said city to subscribe for, and take, upon the books of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, on behalf of said city, four thousand shares of fifty dollars each, of the capital stock of said *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, upon the terms and conditions hereinafter mentioned; now, in pursuance of said order, I, *John S. Hopkins*, mayor of the city of *Evansville*, for and on behalf of said city, do

Nov. Term,
1860.

THE EVANS-
VILLE, &C.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

hereby subscribe to, and take, four thousand shares of fifty dollars each, of the capital stock of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, upon the following terms and conditions, mentioned in the said order of said common council, directing the subscription to be made; that is to say:

"*First.* Upon condition that the said railroad company shall and will receive at par, in payment of said four thousand shares, the coupon bonds of the city of *Evansville*, bearing interest at the rate of seven per centum per annum; the principal of said bonds to be payable in not less than twenty years from the 1st of *July*, 1853, and the interest to be payable semi-annually, in the city of *New York*.

"*Second.* Upon condition that the bonds, so to be issued by the city, are not to be converted, nor convertible, into the capital stock of said railroad company, and that the issuing of said bonds by the city, and the issuing of certificates of stock for said four thousand shares, by the railroad company to the city, are to be concurrent acts.

"*Third.* Upon condition that the said certificates of stock, so to be issued to the city by said railroad company, shall bear interest at the rate of seven per centum per annum from the time they are issued, until such time as the said railroad shall be completed from *Evansville* to *Indianapolis*.

"*Fourth.* Upon condition that the city may issue certificates, or receipts, for all taxes levied and collected by the city to pay the interest which may accrue upon said bonds, and that the holders of said receipts or certificates, upon the presentation of such receipts or certificates, to the amount of fifty dollars or upwards, at the office of said railroad company, in *Evansville*, shall be entitled to receive from said company an equal amount of the capital stock of said company, for which certificates of stock shall be issued by said company to the persons entitled thereto, and said certificates shall bear interest at seven per centum per annum from date thereof, until said road shall have been completed from *Evansville* to *Indianapolis*: *Provided, however*, that said railroad company shall not be required to issue any certificate of stock

for any fractional part of a share of the capital stock thereof.

Nov. Term, 1860.

THE EVANS-VILLE, &c. RAILROAD CO. v. THE CITY OF EVANSVILLE.

"*In Witness Whereof*, I, *John S. Hopkins*, mayor of the city of *Evansville*, have hereunto subscribed my name, and affixed the corporate seal of said city, this 28th day of *May*, A. D. 1853.

{CITY SEAL.}

" J. S. HOPKINS, *Mayor*."

"And the plaintiff says, that, after the making of said subscription by said defendant — by *John S. Hopkins*, her said authorized agent—the said defendant ratified and confirmed the same, and paid of said subscription the sum of one hundred thousand dollars, in said bonds, to said plaintiff, running twenty years from their date, payable in *New York;* and said defendant, by her authorized proxy, voted at the subsequent elections for directors, the number of votes her said stock was entitled to, up to the *July* election, 1857, inclusive, and received her certificate of stock for said two hundred thousand dollars. And the plaintiff further says, that she has complied with, and performed, all the conditions of said subscription, on her part to be kept and performed, and that one hundred thousand dollars of said subscription remains wholly unpaid. And the plaintiff further says, that, after the making of said subscription, and after the payment by said defendant of one hundred thousand dollars thereof in said bonds, in pursuance of the tenor and effect of said subscription, that is to say, heretofore, to wit, on the 12th day of *December*, 1855, she duly demanded of said defendant the payment of the said sum of one hundred thousand dollars of said subscription, the balance then due and unpaid, in their bonds, in pursuance of the terms, tenor, and effect of said subscription; and upon such demand, the said defendant failed and refused to issue and deliver said bonds, or in any other manner to pay said one hundred thousand dollars of said subscription, whereby the said defendant became liable to pay said plaintiff said sum of one hundred thousand dollars in money; and being so liable, the said defendant, afterward, to wit, on the day and year aforesaid,

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

at the county aforesaid, in consideration thereof, undertook and faithfully promised said plaintiff to pay her the said sum of one hundred thousand dollars in money, whenever she should be thereto requested. Nevertheless, the plaintiff says that said one hundred thousand dollars of said subscription remains still due and unpaid by the defendant to the plaintiff, although often requested; and the plaintiff demands judgment against said defendant for one hundred and fifty thousand dollars, and other proper relief.

"O. H. SMITH, *Att'y for Pl'ff.*"

A demurrer was filed to the complaint and overruled, the defendant taking exceptions.

The defendant then answered in twenty-four paragraphs, to all of which, except the first, the plaintiff demurred. The demurrer was sustained as to all except the 4th, 13th, 14th, 15th, 20th, and 22d; and as to them overruled, each party excepting. The 1st paragraph was a general denial, and the 4th the same in substance with the 22d; hence they need be no further noticed. The 13th, 14th, 15th, 20th, and 22d are as follows:

"13th. At the time of issuing, by the defendant to the plaintiff, of bonds to the amount of one hundred thousand dollars, as stated in the complaint, no order had been made by the board of directors of said railroad company, requiring the defendant to issue any bonds, or pay any stock, nor had any notice of any such order been given to the defendant; and the said subscription by the said *John S. Hopkins*, having been made without authority from the common council of the city of *Evansville* to make the same, in manner and form as the same is set forth in the complaint, of which the plaintiff had notice; and the said bonds not being due, and the defendant not being bound to issue and deliver the same to the plaintiff, it was agreed between the plaintiff and defendant, at the time of, and immediately before, the issuing of said bonds, so issued by defendant to plaintiff, as alleged in the complaint, that in consideration that the defendant would then issue and deliver to plaintiff defendant's bonds to the amount of one hundred thousand dollars, plaintiff would

expend the same, or the proceeds thereof, in the construction of the first division of said railroad, extending from *Evansville* to the crossing of the *Ohio and Mississippi Railroad*, in *Daviess* county; and defer the issuing of the remaining bonds, to the amount of one hundred thousand dollars, until the same should be needed by the plaintiff to aid in the construction of the second division of said road, lying north of the said *Ohio and Mississippi Railroad*, and expend the same, or the proceeds thereof, in the construction of said second division of said road; and it is under and in pursuance of this agreement, that defendant issued said bonds, so delivered to the plaintiff, as is stated in the complaint. And defendant avers that the plaintiff has never been in a condition to proceed with the construction of the second division of said road, nor has the plaintiff ever adopted any measures, or let any contracts, for the construction thereof; nor has the plaintiff, at any time, contemplated the commencement of, or intended to commence the construction thereof, until after this time, nor until the first division of the said road should be finished, or prepared for the cross-ties and iron. And the first division of said road is not now so far finished as to be ready for the cross-ties and iron, nor is it likely to be for a long time to come, nor has the plaintiff ever made any order for the adoption of any measures which require the expenditure of money or bonds, in the construction of said second division of said road. But the plaintiff now seeks to recover one hundred thousand dollars in money, in lieu of that amount of defendant's bonds, with the view to expend the same in constructing the first division of said road, contrary to said agreement."

"14th. For further answer to the complaint, the defendant says, that neither the said *John S. Hopkins*, as mayor of the city of *Evansville*, or otherwise, nor any person, or persons, ever had any authority whatever to make the subscription for stock mentioned in the complaint, and on which this action is founded; nor did the defendant ever ratify, or confirm, or sanction, in any way, the said subscription, by issuing bonds, receiving stock certificates, voting at elections, or otherwise, as is alleged in the complaint.

VOL XV.—26

*Margin note:* Nov. Term, 1860.

THE EVANSVILLE, &c. RAILROAD Co. v. THE CITY OF EVANSVILLE.

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

"15th. On the 7th day of *May*, 1853, the common council of the city of *Evansville* authorized the mayor of said city, (*John S. Hopkins* then being such mayor,) and the city attorney, (*Conrad Baker* then being such attorney,) to subscribe for, and take 4,000 shares of the capital stock of said railroad company, upon certain conditions, and subject to certain stipulations, essentially and materially different from the conditions and stipulations contained and expressed in the contract, or subscription, on which this action is founded. But neither the said mayor alone, nor the said mayor and city attorney jointly, nor any other person or persons, jointly or severally, ever had any power or authority to subscribe for, or take said stock, upon, or subject to, any or either of the conditions or stipulations contained in the contract, or subscription, which is the foundation of this action; nor did the defendant, or said common council, ever ratify, confirm, or sanction, the said subscription, on which this action is founded, in manner and form as is alleged in the complaint, or otherwise; for neither the defendant, nor the said common council, ever had any notice or information that the said *John S. Hopkins*, as mayor, had made the subscription mentioned in the complaint, or any other subscription containing the same, or similar stipulations and conditions. On the contrary, the plaintiff fraudulently procured the said *John S. Hopkins*, as mayor, to make the said subscription alone, in the absence of said city attorney, and without his advice, assistance, knowledge or participation; and fraudulently procured the said *Hopkins* to make the said subscription, by pretending that it was in accordance with the authority given by the said common council as aforesaid, and contained the conditions and stipulations provided for in the order of said council, authorizing said stock to be subscribed for; and the said plaintiff fraudulently represented to the defendant and said council, that the said subscription had been made in accordance with the authority given as aforesaid, and by that means fraudulently procured the defendant to issue bonds to the amount of $100,000, and accept said certificate of stock, and by the same means induced the defendant to vote at said elections; the defendant believing at the time, that said subscription

had been made, in manner and form, and subject to the stip-
ulations and conditions specified in the authority given to
subscribe for said stock. And the plaintiff fraudulently kept
said subscription concealed from the defendant, and never
placed it in the office of the plaintiff's secretary, or president,
and the defendant was wholly and utterly uninformed and
ignorant of the fact that said *Hopkins* alone, in the absence,
and without the advice, assistance, or participation of said
city attorney, had subscribed for said stock; and was wholly
uninformed and ignorant of the form and contents of the said
subscription, as actually made by said *Hopkins*, and set out
in the complaint, until after the commencement of this suit."

"20th. And the said defendant, in further answering,
says, that the said *Evansville, Indianapolis and Cleveland
Straight Line Railroad Company* was organized for the
purpose of constructing a railroad, of uniform gauge, from
*Evansville*, in *Vanderburgh* county, *Indiana*, to the town
of *Union*, in the county of *Randolph*, by way of the city of
*Indianapolis*, as will appear by the said exhibit *A.*, referred
to in the last paragraph [It does so appear in the articles of
association]; and the condition of the supposed subscription
of the defendant to the capital stock of said company, sued
on in this action, was the promise and assurance of the plain-
tiff to the defendant, made prior to, and at the time of, said
subscription, that said railroad should be so made, from
*Evansville* to *Union* aforesaid; but the plaintiff, before the
commencement of this action, and before the making of the
demand of the bonds mentioned in the complaint, utterly and
entirely abandoned the construction of that part of the said
railroad, which is situated between the city of *Indianapolis*
and the town of *Union* aforesaid; and the said plaintiff has
wholly abandoned all idea and intention of ever building or
constructing the said part of said road, situated between
*Indianapolis* and *Union* aforesaid; and by reason of the
abandonment of that part of said road, which is situated
between *Indianapolis* and *Union*, (which abandonment was
made by the plaintiff without the consent, and against the
will of the defendant,) the said defendant says that the con-
sideration of the said subscription of the defendant to the

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

capital stock of said railroad company, mentioned in the plaintiff's complaint, has wholly failed."

Issues of fact were joined on the 13th, 14th, 15th and 20th paragraphs, and a replication was filed as follows, viz.:

"12th. The plaintiff, further replying to the 4th, 13th, 14th, 15th, and 22d paragraphs of the defendant's answer, says that the defendant is, and ought to be, estopped to allege any, and all, of the matters in said paragraphs respectively alleged; because, the plaintiff says, that on the 7th day of *May*, 1853, at a regular meeting of said mayor and common council, lawfully convened in said city of *Evansville*, the said mayor and common council adopted and passed a certain preamble and resolutions, and then and there duly recorded the same in the records of the proceedings of said mayor, and common council, and the same was, then and there, duly signed by the said mayor, and attested by the clerk of said city, after having been duly read over in said common council, at said meeting, a copy of which said preamble and resolutions, from said record, is herewith filed as a part of this paragraph, and marked "*A*," by which preamble, orders, and resolutions, the said mayor and common council, then and there, on their own record, declared, admitted, determined, and decided, that, by petitions then and there presented to them, and filed with them, by more than two-thirds, and about five-sixths, of the then resident freeholders of said city, they, the said mayor and common council, were, then and there, requested and petitioned to subscribe and take, on behalf of said city, 4,000 shares of fifty dollars each, in the capital stock of said railroad company, and then and there unanimously ordered that the petition of the petitioners should be granted, and that the said mayor, assisted by the said city's attorney, should make said subscription accordingly. And, in pursuance of the authority thus given to said mayor, he did, afterward, to-wit, on the 28th day of *May*, 1853, duly, and under the defendant's corporate seal, and aided and assisted by said city attorney, make the subscription copied into the complaint in this cause; all of which, as well as the form and terms of the subscription last aforesaid, was then and there known, and has, ever since, been well known

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

to the said mayor and common council, and to all the people, and citizens, and residents of said city. And the plaintiff says, that afterward, to-wit, on the 8th day of *October*, 1853, at another regular meeting of said mayor and common council, lawfully convened in said city, the said mayor presented to said common council, for its approval, the form of the bonds to be issued to the plaintiff, by the defendant, in payment of the subscription mentioned in the complaint; and the said common council, then and there, approved said form of said bonds, and then and there decided, resolved, and ordered, that 100 of said bonds, of $1,000 each, should be signed by said mayor, attested by said city clerk, sealed with the corporate seal of said city, dated as of the first day of *October*, 1853, numbered from 1 to 100 inclusive, and delivered to the plaintiff in part payment of said subscription named in the complaint. All which determinations and orders, the said mayor and common council then and there caused to be entered at large on the record of their proceedings, as such, and the same being then and there read openly before the said mayor and common council, and being then and there by them corrected and approved, were then and there duly signed by said mayor, and attested by said city clerk; a copy of which, taken from said record, is filed herewith as a part of this paragraph, and marked "*B.*" And the plaintiff says, that after all said doings, to-wit, then and there, the defendant, by said mayor and clerk, executed and delivered to the plaintiff said 100 bonds, of $1,000 each, duly signed, attested, numbered, and dated as aforesaid, in part payment of the subscription mentioned in the complaint, all which was then, and ever since has been, well known to said mayor and common council, and to all the citizens, residents, and freeholders of said city. And the plaintiff says, that all the acts, above on the part of the plaintiff, in this paragraph set forth, were done on the part of the plaintiff, and the said subscription was received by the plaintiff, as were also said one hundred bonds, in good faith and without fraud. And the plaintiff says that, by taxes raised by said mayor and common council, by assessments on the freeholders and citizens of said city, the said defendant paid all the interest accruing on said

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

100 bonds, for two years next after their date; and that for the purpose of making said road, the plaintiff, immediately on the receipt of said bonds, sold the same to *bona fide* purchasers, who had no notice of any irregularities in regard to said petition, subscription, or bonds, and who still hold the same; and the plaintiff says, that on the faith of said acts of said mayor and common council, and of the said subscription, and of said bonds, divers, to wit, 500, persons, residing along the line of said road, afterward, and before the commencement of this suit, subscribed and paid large sums to the capital stock of the plaintiff, which subscriptions amount, together, to a large sum, to-wit, $200,000, which subscriptions were induced by said subscription of the defendant; and on the faith of said doings of said mayor and common council, and of the subscription in the complaint mentioned, and of said 100 bonds, the plaintiff and divers contractors entered into large contracts for the making of said road, which contracts were entered upon, and to a considerable extent performed, before the commencement of this suit; and the plaintiff says, that, by said acts of said mayor and common council, and by the making of said subscription and bonds, the rights and interests of all the stockholders in the plaintiff's company, have, long since, become deeply affected, and the non-payment of said subscription, in the complaint set forth, would, and does operate injuriously, and as a great hardship and fraud, on all said stockholders. The plaintiff says that the defendant, and said mayor and common council, and all the people of said city, well knowing of all the facts above in this paragraph set forth, at the times when each of those facts respectively occurred, and ever since, yet none of them has ever, at any time before the commencement of this suit, made any objection either to the validity of said subscription, or of said order, or of said bonds, or of any other of the proceedings aforesaid; but, on the contrary, they have all acquiesced in all said matters up to the time of bringing this suit, and none of them has ever instituted any legal proceedings, in any manner, to set aside, enjoin, or disannul any of the said doings of said mayor and common council, or said subscription, or said bonds; on the contrary, the defendant, ever

since the making of said one hundred bonds, till the time of the commencement of this suit, has claimed to be a stockholder in the plaintiff's company; and the plaintiff further says, that, at the time when said 100 bonds were so executed and delivered as aforesaid, the plaintiff executed and delivered to the defendant, and the defendant received and accepted from the plaintiff, on said subscription, a certificate, in due form, of 4,000 shares of stock in the plaintiff's company, of $50 each; whereby the defendant has, ever since, claimed to be, and, in fact and in law, has been, and still is, the owner of said shares of stock, to the aggregate amount of $200,000, and the defendant has held, and still holds the same, by virtue of said subscription only, and has never paid any thing for the same, except said 100 bonds; and by virtue of said certificate of stock, and of said stock, the defendant, before the commencement of this suit, by proxy, voted at four annual elections of directors, and other officers of the plaintiff's company, and in fact, voted, by such proxy, at every annual election in the plaintiff's company, which occurred from the time when said bonds and certificate of stock were so delivered as aforesaid, till the commencement of this suit. The plaintiff says, that each and every of the matters above in this paragraph stated, the said mayor and common council, and all the resident citizens and freeholders of said city, at the time when said matters, and each of them, respectively occurred, and ever since, had due and full notice and knowledge.

"*Wherefore*, the plaintiff says that the defendant, by the matters above in this paragraph stated, is estopped to make the allegations in said 4th, 13th, 14th, 15th, and 22d paragraphs respectively alleged, or to make any of said allegations.

"Jer. Smith, } *Att'ys for Plff.*"
"D. McDonald, }

### EXHIBIT A.

"And now, it appearing to the satisfaction of this board, by petitions filed and presented for the purpose, that more than two-thirds, and about five-sixths of the residents of the city

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

of *Evansville*, and freeholders of said city, have signed said petitions, which petitions pray that the mayor and common council of the city of *Evansville*, will subscribe for and take, on behalf of said city, four thousand shares of the capital stock of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company;* the shares to be fifty dollars each, and the aggregate amount of the stock, thereby prayed to be subscribed, being two hundred thousand dollars; and the mayor and common council being fully advised in the premises:

*It is unanimously ordered:* That the prayer of said petitioners be granted.

*And it is also unanimously ordered,* That the mayor of the city, assisted by the city attorney, do subscribe and take upon the books of said company, on behalf of this city, four thousand shares, of fifty dollars each, being two hundred thousand dollars, of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company.*

And, on motion, *it is further ordered:* That, by understanding already had with the representatives of the railroad company, that the capital stock now ordered to be taken in the *Evansville, Indianapolis and Cleveland Straight Line Railroad*, shall be paid for in the following manner, to wit: by issuing to said company the coupon bonds of this city, bearing interest at the rate of 7 per cent. per annum, payable semi-annually, in the city of *New York;* said bonds to amount in the aggregate to two hundred thousand dollars, and to be payable in not less than twenty years from the first day of *July* next; that said bonds shall not be made convertible into the capital stock of said company; and that they shall be received by said company in payment for said stock at par.

*And it is further understood and ordered:* That for all taxes levied and collected to pay the interest accruing upon said bonds, the tax-payer shall be entitled, upon presentation of the proper receipt, or receipts, amounting to the sum of fifty dollars or more, at the office of the said company in *Evansville*, to the same amount in the capital stock of the company, which stock shall bear 7 per cent. interest, payable

in the stock of the company, until said railroad shall pay dividends.

May 7, 1853.                    J. S. HOPKINS, *Mayor.*

Nov. Term, **1860.**

THE EVANS-
VILLE, &C.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE..

EXHIBIT B.

October 8, 1853.

" And now here the mayor submits to the board the form of the bonds to be issued by the city of *Evansville,* for the city's subscription to the capital stock of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company,* which bonds read as follows:

UNITED STATES OF AMERICA.

STATE OF INDIANA.            THE CITY OF EVANSVILLE.
No.          SEVEN PER CENT. BOND. ·          $1,000.

The Common Council of the city of *Evansville, Indiana,* acknowledge the said city to owe, upon the sale of this bond, to the bearer, one thousand dollars; which sum, said city promises to pay to the bearer, or to the holder hereof, at the Merchants' Bank, in the city of *New York,* on the first day of *January,* in the year one thousand eight hundred and seventy-four; and also interest thereon, at the rate of seven per centum, per annum, semi-annually, on the first day of each *July* and *January* from the date hereof, until the said principal sum shall be paid, on the presentation of the annexed interest warrants at said bank. This obligation, and all rights and benefits arising therefrom, may be transferred by general or special indorsement, or by delivery, as if the same were a note of hand, payable to the bearer, and hereby waive all benefit from valuation or appraisement laws.

*In testimony whereof,* the said Common Council of the city of *Evansville,* have hereunto caused to be set their corporate seal, and these presents to be subscribed by the mayor of said city, and countersigned by the clerk thereof, on this
day of          , A. D. 1853.          *Mayor.*
*City Clerk.*

*Whereupon, it is unanimously ordered by the Common Council:* That the said form, so submitted by the mayor, be,

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

and the same is hereby, approved and adopted as the form of the bonds to be issued for said stock, in said railroad company.

*And it is further ordered:* That one hundred of said bonds be signed by the mayor, and attested by the clerk, and sealed with the corporate seal of the city, and dated as of the first day of *October*, A. D. 1853, and numbered from one to one hundred, inclusive; and that the said one hundred bonds, when so signed, attested, sealed, dated, and numbered, be delivered to the president and directors of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, and that he receive, in lieu of said bonds, a certificate for two thousand shares of the capital stock of said railroad company."

Substantially the same matter was replied, in other replications, to the 4th and 22d paragraphs of the answer. Demurrers were sustained to these replications, and the plaintiff excepted. There being no further replications to the 4th and 22d paragraphs of the answer, final judgment was rendered for the defendant.

The plaintiff appeals, and, by assignments of error, brings in review the rulings upon the demurrers to the paragraphs of the answer which were held good, and upon the demurrer to the replications which were held bad. The appellee also assigns error in overruling the demurrer to the complaint, and otherwise.

We will first examine the objections made to the complaint; as the validity of that is brought in question in determining the sufficiency of the subsequent pleadings.

The first objection made to the complaint is that the subscription is invalid because "the city council were not authorized by the city charter to make any other than a cash subscription, to be paid in installments of not more than ten per cent. per month, as required by the board of directors."

In connection with this objection, it is urged, *secondly*, that the railroad company had no power to receive any other than a cash, or real estate subscription; and, *thirdly*, that the subscription is void, as against public policy, because payable in bonds at par, which ran twenty years.

These three objections may be considered together.

By the charter of the city of *Evansville*, the common coun-
cil are authorized "to take stock in any chartered company
for making roads to said city, * * * *Provided*, that no
stock shall be subscribed or taken by the common council in
any such company, unless it be on the petition of two thirds
of the residents of said city, who are freeholders of said city,
distinctly setting forth the company in which stock is to be
taken, and the number and amount of shares to be sub-
scribed; *And provided also*, that in all cases where such
stock is taken, the common council shall have power to bor-
row money, and levy and collect a tax on all real estate, (either
inclusive or exclusive of improvements, at their discretion,)
for the payment of said stock." Local Laws 1847, § 30, p. 14,
40th specification.

That a railroad is such a road as is embraced in the terms
of the charter, is settled in the case of *The City of Aurora* v.
*West*, 9 Ind. 74.

The common council would have no power to subscribe at
all, in the absence of the petition provided for in the charter
of the city; but when the power to subscribe is conferred by
the petition, the mode in which it is to be exercised must
necessarily be left, in a measure, to the discretion and judgment
of the common council. *Slack, &c.* v. *Maysville and Lex-
ington Railroad Co.*, 13 B. Mon. 1. Nothing is determined
by the petition, but "the company in which the stock is to be
taken, and the number and amount of shares to be sub-
scribed." The time and mode of payment, are left to be
agreed upon by the common council, and the company in
which stock is to be taken; and unless that agreement vio-
lates some rule of law, the subscription is undoubtedly valid.

The appellee insists that the common council could never
have been induced to subscribe for so large an amount, had
the city been required to pay down, or in installments of ten
per cent. per month. To this it may be answered, that the
petition of the citizens fixed the amount to be subscribed, and
it may be doubted whether the council had power to subscribe
at all, unless for the amount designated in the petition. But
be this as it may, the council were authorized, by the petition,
to subscribe for the amount designated, and we think the

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

power to subscribe, carries with it, necessarily, the power to fix upon the time and terms of payment. If the appellee received more favorable terms, as to time of payment, than other subscribers to the stock of the railroad company, it does not lie in her mouth, in order to defeat the subscription, to say that other stockholders were thereby defrauded. But there is another view, that places the validity of the subscription, so far as these objections go, beyond doubt. The city was expressly authorized to borrow money to pay for the stock subscribed. The power to borrow money, necessarily implies the power to determine the time of payment, and also the power to issue bonds or other evidences of the indebtedness. Now, if the railroad company saw proper to receive the bonds as cash, in payment of the subscription, instead of requiring the city to negotiate and raise the money upon them herself, it seems to us that the transaction was entirely proper, and not beyond the corporate powers of either the city, or the railroad company. At any rate, if the railroad company was the loser by taking the bonds at par, whereby other stockholders were injured, the appellee can not complain of the arrangement.

This view is fully sustained by the case of *Slack, &c.* v. *Maysville and Lexington Railroad Company, supra,* which involved a somewhat similar question. The Court say, (p. 20): "Moreover, the first act under which the debt was created, gave full power to the County Court to provide for its payment, either by taxation or by borrowing the money, which, of course, implied the power, as it did the necessity, of furnishing some evidence of indebtedness; and the Court might, doubtless, have issued the bonds of the county, in some form, to the lender. If, without the amendatory act, the Court, instead of borrowing the money upon these bonds, in order to pay the subscription to the company, had transferred them to it, at once, in payment, we do not perceive that the original power would have been thereby materially, if at all, departed from; or that the proceeding would have furnished any just ground of complaint to the citizens of the county, and much less a ground of constitutional objection."

It is objected: 4. That the city had no power to give bonds

payable abroad, so as to enable her to agree to pay more than 6 per cent. interest.

Nov. Term.
1860.

THE EVANS-
VILLE, &C.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

We do not think the common · council exceeded their authority by making the bonds payable in *New York.*

They were authorized to borrow money, and they might borrow it in *New York*, and agree to pay it there. There is no restriction in the charter, in this respect. Indeed, such restriction might operate injuriously upon the city; and in the absence of an express restriction, we think the power to borrow, carries with it the right to borrow wherever the money can be procured on the best terms, and, of course, the right to agree to pay where borrowed. In the case above cited, from *Kentucky*, we do not discover that, by the statute, any express authority was given to make the bonds payable any where else than the county treasury, and yet bonds made payable in *New York*, were upheld. The point was expressly decided by the Court of Appeals of *Kentucky*, in the case of *Maddox et al.* v. *Graham and Knox*, reported in 7 Law Reg. p. 747. There are some cases in *Illinois*, holding that upon certain statutory provisions, bonds issued by counties, can not be made payable, except the interest, elsewhere than at the county treasury. It was provided, "that the county Court of each county, which may, by a vote of said county, have subscribed, or may hereafter subscribe, to the capital stock of said company, is hereby authorized to make the interest on the bonds of subscription aforesaid, payable at such place or places, as the said county Courts, respectively, may order and determine." It was held that, "when the Legislature expressly mention the interest alone, the inference is strong that they intended to exclude the principal from that provision." *Prettyman* v. *Supervisors of Tazewell County*, 19 Ill. R. 406. *People &c.* v. *The County of Tazewell et al.*, 22 Ill. R. 147.

These cases, based, as they were, upon peculiar statutory provisions, have but little bearing upon the question here presented.

But it is insisted that the city had no power to pay 7 per cent. interest, and therefore that the subscription is void. As before observed, we think the common council, having

power to borrow money, had the power to issue bonds therefor, payable in *New York*. But we, perhaps, can not notice judicially the rate of interest allowed by the law of that State; and we need not decide here, whether, on the supposition that the law of *New York* allows interest at the rate specified in the bonds, the city of *Evansville* could legally contract to pay interest at that rate. If the bonds are usurious, they are not for that reason void: usurious contracts are not by the laws of our State void, but good for the principal sum. There is no provision in the charter of the appellee, fixing the rate of interest she may pay on the money she may borrow; hence her contract, in that respect, would be governed by the general law of the State. Had there been a prohibition, in the charter of the city, to pay more than 6 per cent. interest, perhaps the agreement to pay more would have been so far in violation of the charter as to render the whole contract void; not because it stipulated for a greater rate of interest than is allowed by the general law of the land, *but because it is such a contract as the city would not have power to make.* The case would then, perhaps, have fallen within that of the *Bank of Chillicothe* v. *Swayne*, 8 Ham. (O.) R. 252. *Bank of the United States* v. *Owens*, 2 Pet. R. 527; *Straus* v. *The Eagle Insurance Co. of Cincinnati*, 5 O. S. R. 59.

We are not able to perceive any good reason why the city could not, in good faith, legally agree to pay the rate of interest allowed by the law of the State where the money was to be paid; but, as before observed, it is unnecessary to decide this point, because the contract imposes upon her an obligation to pay the principal, even if she is absolved from the interest.

The fifth and sixth objections are, that the railroad company had no power to agree to pay the city interest upon her stock, or to issue stock to the tax-payers for the amount of taxes paid to meet the interest on the bonds, and to pay interest upon such stock.

We perceive no valid reason why the railroad company should not have it in her power to pay interest to the city on the stock subscribed.

We are not apprized that any other rule was adopted in reference to other subscribers. Such rule has a tendency to place all subscribers upon an equality. Those who subscribe and pay early in the enterprise, are thereby placed more nearly upon an equality with those who invest their funds at a later period in the progress of the work. The work of constructing a railroad sometimes requires years for its completion, and dividends to stockholders seldom, if ever, accrue before the road is fully completed. If interest were not allowed upon the stock, those who invest their funds at the beginning, would receive nothing more than those who take their stock when the work may be nearly completed. We see nothing against the law or public policy in this arrangement. The construction of a railroad requires a large outlay of capital, much of which must be furnished before the work can progress to any considerable extent. If interest is allowed on the stock from the time it is paid for, there is an inducement for capitalists to invest early, and furnish the means to successfully carry on the enterprise.

We do not feel called upon to determine whether the agreement to issue stock to the tax-payers, for the money they might pay to meet the interest on the bonds, could be enforced as against the other stockholders in the railroad company. Neither the railroad company nor any of its stockholders are complaining of this agreement. If that agreement would be deemed a fraud upon the other stockholders, the city was as well apprized of it at the time she subscribed, as now. The city drove what would seem to have been, to her, a very advantageous bargain, had the work proved successful. We do not think she can now avoid the payment of her subscription, on the ground that she obtained a stipulation in her favor, which the railroad company were not authorized to make. If the stipulation, in reference to the issuing of stock to the tax-payers, be considered as void, it may be disregarded, and the agreement enforced as far as it is valid. This stipulation is separable from the remaining portions of the contract.

The seventh, eighth, and ninth objections are disposed of by what has already been said. The tenth is, that it is not

Nov. Term, 1860.

THE EVANSVILLE, &c. RAILROAD CO. v. THE CITY OF EVANSVILLE.

averred in the complaint, that any order was made by the board of directors of the railroad company requiring payment of subscriptions. This objection is based upon § 8 of the act to provide for the incorporation of railroad companies (1 R. S. 1852, p. 412); which provides that it shall be lawful for the directors to make calls, &c., *provided*, that such subscriptions shall not be required to be paid except in equal installments of not more than 10 per cent. a month." This provision, we think, has no application to cases where the terms of payment are agreed upon in the contract of subscription, and where the contract contemplates immediate payment upon those terms, as in the case at bar.

In the case of *Breedlove* v. *The Martinsville and Franklin Railroad Co.*, 12 Ind. 114, it was held, that an action would lie, without any proof of calls having been made, upon a subscription agreeing to pay 10 per cent. on each share, every sixty days, after the work should be put under contract by the proper board.

The eleventh and last objection urged to the complaint is, that the law providing for the incorporation of railroad companies is unconstitutional and void; because there is no sufficient security provided for the debts of such corporations, as required by § 14 of Art. 11 of the Constitution. The unusual length to which this opinion is necessarily extended, forbids a discussion of this question. It is sufficient to say, that the appellee does not stand in a position to question the validity of the appellants' corporate existence. It has been settled in numerous cases in this Court, that a person contracting with a corporation, as such, is estopped, by the contract, to deny the legal existence of the corporation.

We are of opinion that none of the objections to the complaint are well taken.

We now turn our attention to the paragraphs of the answer which were held good.

The 20th paragraph we think bad, for the reason that it seeks to set up a parol condition inconsistent with the terms of the subscription. The subscription, on its face, is absolute, and not conditioned that the road should be built from *Evansville* to *Union*. That such defense can not be set up, is

settled by the case of *The New Albany, &c. Railroad Co.* v. *Fields*, 10 Ind. 187; where it was held, that the consideration of the promise of the subscriber was the stock to be by him received, and that the subscription could not be varied by any cotemporaneous verbal condition.

It will be observed that this paragraph does not allege an abandonment of the intention to construct the road from *Evansville* to *Indianapolis*. It, therefore, does not appear that the company have abandoned the intention to construct such a road as the city was authorized to take stock in. We need not decide what would be the effect of such abandonment.

We deem it unnecessary to determine whether the thirteenth, fourteenth, and fifteenth paragraphs of the answer, are good, or otherwise; for if good, we are of opinion that the replication to them was good, and that the demurrer thereto should have been overruled.

If those paragraphs are to be deemed good, it is because they controvert the authority of Mayor *Hopkins* to make the subscription.

Striking out that portion of them which questions such authority, and the other facts set up we think clearly insufficient. The replication shows the authority of the mayor, in the premises, and sets out the record of the proceedings of the common council, directing him to make the subscription. But it is insisted that he did not make *such* a subscription as he was authorized to make, by the resolution of the common council. We see no very substantial difference between the subscription as actually made by the mayor, and as ordered by the common council, excepting in this, that the subscription provides for the payment of interest to the city on the stock subscribed by her, while nothing is said on that subject in the resolution of the common council. But it seems to us that the common council, on the day after the subscription was made, fully ratified and confirmed it, *as made*, by approving the form of the bonds to be issued on the subscription, and ordering one hundred of them to be signed by the mayor, attested by the clerk, and delivered to the proper officers of the railroad company, in payment for two thousand shares of

Nov. Term, 1860.

THE EVANSVILLE, &c. RAILROAD CO.
v.
THE CITY OF EVANSVILLE.

Nov, Term, 1860.

THE EVANS-VILLE, &c. RAILROAD Co. v. THE CITY OF EVANSVILLE.

the stock. The same remark may be made in reference to the alleged defect in the subscription, in consequence of its having been made by the mayor, without the assistance of the city attorney.

But it is insisted that the common council only, were authorized by the charter to contract, and that their authority could not be delegated to the mayor, and hence, that the subscription, thus made by the mayor, is void. There are two answers to this position which seem to us to be conclusive. The first is, that if the subscription made by the mayor be deemed *his* act, and not that of the common council, the common council made it *their* act, by adopting it and ordering the bonds to be issued in pursuance of it. But, secondly; it may be admitted that where, by the terms of the charter of a corporation, certain persons only, are authorized to contract on behalf of the corporation, such authority can not be delegated; sub-agents can not be appointed by such persons, with authority to bind the corporation. Ang. and Ames on Corp. § 277. But does the record present the case of an attemped delegation of authority? We think clearly not. The mayor was acting merely as the instrument, or *amanuensis*, of the common council. It was through him, and a very proper person for that purpose, that the common council made their contract.

This case is well illustrated by that of *Lyon* v. *Jerome*, 26 Wend. 484. There, a canal commissioner was authorized to appropriate private property to public use. *The president* of the Senate, in delivering his opinion, (p. 498,) says: "This is an exceedingly delicate and important power, and only exists in the State by virtue of her right of eminent domain, as sovereign. In expressly granting this power, a confidence in the grantee of the power, as to its exercise, is implied. It can not, therefore, be delegated. It must be exercised by the grantee in person, and not by proxy or substitute. The commissioner can *act* by others. He must *judge* himself. He only, can decide upon the necessity or expediency, in any case, of appropriating private property to public use; but he may employ his subordinate officers, or agents, to carry such decision into effect. Such, I think, is the fair interpretation, as

Nov. Term,
1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

well of the special, as of the general law, applicable to the case: so also are the authorities." Here, the common council *judged* for themselves, and they *acted* through the instrumentality of the mayor; and there can be no doubt that his act should be regarded as that of the common council.

This brings us to the 22d paragraph of the answer, and the replication thereto. The question here involved is perhaps the most important one arising in the case.

By this paragraph of the answer it appears that the petition to the common council praying for the subscription, was signed by less than the requisite number of the freeholders of the city; and it must be admitted that unless the petition was signed by the requisite number, the common council had no authority to make the subscription. But to this it is replied, amongst other things, that the common council, being lawfully convened, determined and decided that by petitions then and there presented to, and filed with, them, more than two-thirds, and about five-sixths of the resident freeholders of the city had petitioned for the subscription; whereupon it was ordered by the common council that the petition be granted, and the subscription made. A record of the proceedings of the common council is set forth, which fully sustains the allegations thus made.

The question arises, whose duty was it to determine whether the requisite number of the freeholders of the city had petitioned for the subscription? We think it clear that that duty pertained to the common council, no other tribunal having been provided for that purpose.

The case of *The Commissioners of Knox county* v. *Aspinwall et al.*, lately decided in the Supreme Court of the United States, (21 Howard, 539,) settles a principle that is entirely applicable here. That case, to be sure, involved the validity of bonds that had already been issued, but the decision was not made to turn upon the fact that the bonds had passed into the hands of third persons. The following extract from the opinion in that case will sufficiently show the point made, and the ground upon which it was decided.

"The act in pursuance of which the bonds were issued is a. public statute of a State; and it is undoubtedly true that any

Nov. Term, 1860.

THE EVANS-VILLE, &c. RAILROAD Co. v. THE CITY OF EVANSVILLE.

person dealing in them is chargeable with a knowledge of it; and as this board was acting under delegated authority, he must show that the authority has been properly conferred. The Court must therefore look into the statute for the purpose of determining this question; and upon looking into it, we see that full power is conferred upon the board to subscribe for the stock, and issue the bonds, when a majority of the voters of the county have determined in favor of the subscription, after due notice of the time and place of the election. The case assumes that the requisite notices were not given of the election, and hence, that the vote has not been in conformity with the law.

"This view would seem to be decisive against the authority on the part of the board to issue the bonds, were it not for a question that underlies it; and that question is, who is to determine whether or not the election has been properly held, and a majority of the votes of the county cast in favor of the subscription? Is it to be determined by the Court, in this collateral way, in every suit upon the bond, or coupon attached, or by the Board of Commissioners, as a duty imposed upon it before making the subscription?

"The Court is of opinion that the question belonged to the board. The act makes it the duty of the sheriff to give the notices of the election for the day mentioned, and then declares, if a majority of the votes given shall be in favor of the subscription, the county board shall subscribe the stock. The right of the board to act in execution of the authority, is placed upon the fact that a majority of the votes had been cast in favor of the subscription; and to have acted without first ascertaining it, would have been a clear violation of duty; and the ascertainment of the fact was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the purpose."

We might rest the case here, on the authority of that above cited; but the importance of the question, and the amount involved, induce some further examination. And here we may remark, that we are not called upon to decide whether the common council, (if such case were supposable,) could, *in the absence of any petition on the subject,* by an order or

resolution declaring that such petition had been laid before them, signed by the requisite number of the proper persons, conclude the city. In such case there would be nothing before the council, upon which to act. No question would be presented for their determination. There would be nothing to call forth the exercise of the power vested in them, of determining upon the sufficiency of the petition, in respect to the number and qualifications of the petitioners. Such is not the case before us. Here, it is a fact conceded by the paragraph of the answer in question, that a petition of certain freeholders of the city, asking for the subscription, was laid before the common council. It thereby became the right and the duty of that body, to determine whether the subscription was petitioned for by the requisite number of the proper persons, in order to authorize the subscription; and having passed upon that question, their determination, in the premises, would seem to be conclusive. In order to give the common council power to subscribe, it is necessary that a certain proportion of certain persons should have petitioned therefor; but the common council are to judge of the proportion and qualifications of the persons petitioning, and their judgment, in that respect, is conclusive, unless, indeed, it may be set aside upon some direct proceeding for that purpose.

It is a well settled principle, that where the jurisdiction of an inferior Court depends upon a fact which such Court is required to ascertain and settle, by its decision, such decision is conclusive. *Brittain* v. *Kinnaird*, 1 Brod. and Bing. 432; *Betts* v. *Bagley*, 12 Pick. 572; *Martin* v. *Mott*, 12 Wheat. 19; *Vanderhayden* v. *Young*, 11 John. 150; *vide*, also, *Birdsall* v. *Phillips*, 17 Wend. 464; *Ex parte Watkins*, 3 Pet. R. 193; *The People* v. *The City of Rochester*, 21 Barb. 656. Some of the cases cited are so analagous to, and so well illustrate, the case at bar, that we are induced to examine them more in detail, even at the risk of prolixity. *Brittain* v. *Kinnaird* was an action of trespass, for seizing and taking a certain *vessel* and five hundred pounds of powder. It appeared, at the trial, that the vessel in question, which was decked, and of the burden of thirteen tuns, was seized by the defendants as magistrates under a statute called the

*(margin:)* Nov. Term, 1860.

THE EVANSVILLE, &c. RAILROAD Co. v. THE CITY OF EVANSVILLE.

Nov. Term, 1860.

The Evansville, &c. Railroad Co.

v.

The City of Evansville.

Bum-boat act. The plaintiff was about to offer evidence that the *vessel* in question was not a *boat*, within the meaning of the act, when it was objected that the conviction was the only admissible evidence of what the magistrates had determined, and was conclusive as to the subject matter of that determination. Such being the opinion of the Court, a non-suit was directed, and upon a rule *nisi* for a new trial, the four judges delivered concurring opinions, discharging the rule. The following is extracted from the opinion of *Dallas*, C. J.:

"The general principle, applicable to cases of this description, is perfectly clear; it is established by all the ancient, and recognized by all the modern, decisions; and the principle is, that a conviction by a magistrate, who has jurisdiction over the subject matter, if no defects appear on the face of it, is conclusive evidence of the facts stated in it. Such being the principle, what are the facts of the present case? If the subject matter in the present case were a *boat*, it is agreed that the boat would be forfeited; and the conviction stated it to be a boat. But it is said that, in order to give the magistrate jurisdiction, the subject matter of his conviction must be a boat; and that it is competent for a party to impeach the conviction, by showing that it was not a boat. I agree that if he had not jurisdiction the conviction signifies nothing. Had he, then, jurisdiction in this case? By the act of Parliament he is empowered to search for, and seize gunpowder, in any boat on the river *Thames*. Now, allowing, for the sake of the argument, that "boat" is a word of technical meaning, and somewhat different from a vessel; still it was a matter of fact to be made out before the magistrate, and on which he was to draw his own conclusion. But it is said that a jurisdiction, limited as to person, place, and subject matter, is stinted in its nature, and can not be lawfully executed. I agree; but in the inquiry before the magistrate, does not the person form a question to be decided by evidence? Does not the place—does not the subject matter, form such a question? The possession of a boat, therefore, with gunpowder on board, is part of the offense charged; and how could the magistrate decide, but by examining the evidence in proof of what was alleged? The magistrate, it

is urged, could not give himself jurisdiction by finding that to be a fact which did not exist. But he is bound to inquire as to the fact, and when he has inquired his conviction is conclusive of it. The magistrates have inquired, in the present instance, and they find the subject of conviction to be a boat."

Nov. Term, 1860.

THE EVANS-
VILLE, &c.
RAILROAD Co.
v.
THE CITY OF
EVANSVILLE.

So, in the case at bar, the common council inquired whether the petition before them was signed by the requisite number of the freeholders of the city; and their determination of that fact is conclusive.

But the principle is not limited to cases where the determination to be made is of a judicial character. In *Martin* v. *Mott, supra,* a question arose as to the power of the President of the United States to call out the militia. An act of Congress provided, "That whenever the United States shall be invaded, or be in imminent danger of invasion, from any foreign nation or Indian tribe, it shall be lawful for the President of the United States to call forth such number of the militia," &c. The Court say: "We are all of opinion that the authority to decide whether the exigency has arisen belongs exclusively to the President, and that his decision is conclusive upon all other persons." The same point was decided in *Vander-hayden* v. *Young.* The case of *Betts* v. *Bagley,* is closely analogous. There a question arose, whether a certain discharge under an insolvent law, was valid. The law required the applicant for its benefit, to file his petition in conjunction with creditors owning two-thirds of the debts due by the insolvent. It was held that, in order to give jurisdiction, the petition must be filed by the insolvent in conjunction with creditors *purporting* to hold two-thirds. The Court say, "if he (the magistrate granting the discharge) had jurisdiction, then it follows that whether there were two-thirds, or not, among the creditors, was a fact to be judicially tried and proved, and one upon which the adjudication of the magistrate was conclusive; and one of which the discharge setting forth that such fact was satisfactorily proved, is conclusive evidence."

Further pursuit of this inquiry is unnecessary. We are satisfied that the replication was sufficient, and that the

Nov. Term,
1860.

THE EVANS-
VILLE, &C.
RAILROAD CO.
v.
THE CITY OF
EVANSVILLE.

demurrer to it should have been overruled.   Whether the action of the common council, had it been fraudulent, could have been set aside on proper proceedings, instituted in proper time, and before intervening rights and liabilities had accrued, is a question that does not here arise.   See, however, this subject, the case in 19 Ill. R., *supra.*

Having thus passed upon the material questions raised, the conclusion follows, that the judgment must be reversed, and the cause remanded for further proceedings.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*Jer. Smith, D. McDonald* and *A. G. Porter,* for appellant.
*J. G. Jones, Conrad Baker* and *J. E. Blythe,* for appellee.

(1.) The counsel for appellant cited the following authorities, in support of the several points made by them :

The subscription copied into the complaint is an estoppel by deed, as to all its recitals ; and the only mode, in any case, of denying such recitals, is by *non est factum,* pleaded under oath.   Ang. and Am. on Corp., § 223 ; *Clark* v. *The Woollen Manuf. Co.,* 15 Wend. 256 ; *Wood* v. *Thomas,* 5 Blackf. 553 ; *Reeves* v. *Andrews,* 7 Ind. 208 ; *Bowman* v. *Taylor,* 29 E. C. L. Rep. 90 ; *Carver* v. *Jackson,* 4 Pet. 83 ; *Crane* v. *Morris,* 6 *id.* 611 ; *Trimble* v. *The State,* 4 Blackf. 435 ; *Love* v. *Kidwell, id.* 553 ; *Becket* v. *Bradley,* 7 Mann. and Gr. 994 ; S. C. 49, E. C. L. R. 993 ; *Miller* v. *Elliott,* 1 Ind. 483.

The city is estopped by the record of the common council, which declares that more than two-thirds of the resident freeholders of the city petitioned, &c.   Ang. and Am. on Corp., § 281 ; 1 Salk. 191 ; *McCulloch* v. *The State,* 11 Ind. 424 ; *The People* v. *Rochester,* 21 Barb. 656 ; *Pickard* v. *Sears,* 33 E. C. L. R. 115 ; 1 Greenl. Ev. §§ 22, 207 ; *Clapp* v. *The County of Cedar,* 5 Iowa R. 15 ; *Royal British Bank* v. *Turquand,* 6 Ellis and Blackburn, 327.

The city could negotiate her bonds to the railroad company, as properly and legally as to any other person.   But if that part of the contract was against public policy, it leaves the subscription a money subscription, and does not make the whole contract void.   1 Redfield on Railways, § 58, p. 99 ; *Henry* v. *Vermillion and Ashland Railway Co.* 17 Ohio R. 187 ; *Western Plank Road Co.* v. *Stockton,* 7 Ind. 500 ; *Fleece* v. *Indiana and Illinois Railroad Co.,* 8 *id.* 460.

(2.) Counsel for appellee cited the following, among other authorities : That the city had no power to make her bonds payable, with 7 per cent. interest.   Ang. and Am. on Corp., p. 232 to 236 ; 4 Cond. R. 396 ; 5 Ind. 38.

The contract, being illegal, was void.   *Craig* v. *Missouri,* 4 Peters, 436 ;

13 Peters, 65; *McClure* v. *Purcel*, 3 Marshall, 65; *Hanson* v. *Power*, 8 Dana, 95; *Armstrong* v. *Tbler*, 6 Cond. R. 298; *Wilhite* v. *Roberts*, 4 Dana, 174, 382; *State* v. *Curle*, 15 Mass. 35; *Cooledge* v *Blake*, *id.* 429; 2 Parsons on Contracts, 94, 99; 4 Bibb. 319; 5 J. J. Marshall, 268.