# Richmond.

## CITY OF RADFORD v. HETH AND OTHERS.

### December 5, 1901.

1. MUNICIPAL CORPORATION—*Bond Issue—Changing Rate of Interest—Discretionary Powers of Council.*—If neither the rate of interest, nor the time of payment, of bonds proposed to be issued by a municipal corporation is fixed by the charter, or the ordinance of the Council directing the issue, or the submission to the freeholders for their approval, the Council may, after issuing and negotiating a part of the bonds at one rate of interest and with a specified time of payment, issue and negotiate the residue at a lower rate of interest, and payable at a different time, if deemed proper to do so, provided it is done within a reasonable time after the authority is conferred. The manner of exercising such powers, in the absence of a prescribed mode, is left, to a greater or less extent, to the discretion of the Council.

Appeals from two decrees of the Circuit Court of the city of Radford pronounced November 17, 1900, and March 9, 1901, respectively, in a suit in chancery, wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*R. L. Jordan,* for the appellant.

*Watts, Robertson & Robertson,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

By section 50 of chapter 6 of the charter of the city of Rad-

ford, it is provided that "for the execution of its powers and duties, the City Council may, in the name of, and for the use of, the city, contract loans, or cause to be issued certificates of debt or bonds; provided, that no such certificate of debt or bond shall be issued except by a two-thirds vote of the Council, endorsed by a majority of the freehold voters of each ward voting on the question, and by the standing committee of each ward; but such loans, certificates, or bonds shall not be irredeemable for a period greater than thirty-four years, etc." Acts 1891-'2, page 149.

Under that provision of its charter, the City Council, in July, 1892, passed an ordinance that bonds should be issued by the city to the amount of one hundred thousand dollars for certain city purposes, which ordinance was approved by the standing committees of the east and west wards of the city. On the same day another ordinance was adopted, by which the question of endorsing or refusing to endorse the action of the Council in determining to issue bonds of the city for the amount of one hundred thousand dollars, was directed to be submitted to the freehold voters of the city at an election ordered to be held in August following. At that election, the action of the Council was approved. In 1893 the Council, by an ordinance, determined that the bonds to be issued should be of the denomination of $500.00 each, payable January 1, 1923, bearing interest at the rate of six *per cent. per annum* from the first day of January, 1893, payable in semi-annual installments on the first day of January and July of each year. Bonds of one hundred thousand dollars were lithographed or engraved, one-half of which were executed and signed by the proper officers of the city. Forty-one thousand five hundred dollars of the bonds so signed were sold from May 20, 1893, to November 10, 1896, but the remaining fifty-eight thousand five hundred dollars were not negotiated. In May, 1900, the City Council, by ordinance, directed the last-named bonds to be destroyed, and a like amount of bonds to be lithographed or engraved similar in all respects to the destroyed

bonds, except that the new bonds should bear four *per cent.* interest *per annum,* instead of six *per cent.,* and should be payable in the year 1930, instead of the year 1923. These new bonds were lithographed or engraved, and the City Council were proceeding to negotiate or sell $1,500 of the new bonds when this suit was brought to enjoin them from making sale of the bonds, upon the ground that only six *per cent.* bonds, running for thirty years from January 1, 1893, could be issued under the vote of the city authorizing bonds to be issued. Afterwards, upon motion, the judge in vacation refused to dissolve that injunction, and from that order this appeal was allowed.

Under the charter of the city, the ordinances of the City Council, and the vote of the freeholders of the city, the City Council had the right to issue bonds to the amount of $100,000, including those which had been issued, payable in 1923, bearing six *per cent.* interest. The only question, therefore, which we are called upon to decide is whether, under the charter of the city, the ordinances of the City Council, and the vote of the freeholders, the City Council have the power to issue and negotiate the residue of the $100,000 of bonds, or any part thereof, and make them payable in 1930 instead of 1923, and bearing four *per cent.* interest *per annum* instead of six *per cent.*

Neither in the charter authorizing the City Council to issue bonds under certain conditions, nor in the ordinance of the City Council by which they determined to issue them, nor in the submission of that question to the freeholders for their approval, was there anything said about the rate of interest which the bonds should bear, nor when they should be payable, except that the charter provided the bonds should not be irredeemable for a period greater than thirty-four years.

We are of opinion that the determination of the Council in 1893 to issue the bonds payable in thirty years from their date, bearing six *per cent.* interest, was not an irrevocable act which bound them to issue all the bonds payable in 1923, and bearing six *per cent.* interest, but they had the power, before any of the

bonds had been issued and negotiated, or after issuing and negotiating a part of them, to issue and negotiate such as had not been issued and negotiated at a lower rate of interest, and payable at a different date, if, in their judgment, it was for the best interest of the city that it should be done. Why, when neither the charter, the ordinances of the City Council by which they determined to issue the bonds, nor the vote of the freeholders approving of their issue, fixed the rate of interest the bonds should bear, or the time they should run, except that their payment should not be postponed more than thirty-four years, should the City Council not have the right to issue the bonds from time to time as the money was needed for the purposes for which they were authorized to issue bonds, provided it was done within a reasonable time after the authority was given them, at a less rate of interest than six *per cent.*, and payable at a different date, if the condition of the money market was such that money could be had for a lower rate of interest?

This is the course which would be pursued by an individual or a private corporation in the management of their private affairs, and we know of no reason why those in charge of the affairs of a municipal corporation should not be permitted to exercise a like discretion when there is nothing in the charter or proceedings had thereunder which marks out the manner in which they shall exercise the power conferred upon them. "Power," as Judge Dillon says, "to do an act is often conferred upon municipal corporations in general terms, without being accompanied by any prescribed mode of exercising it. In such cases, the Common Council, or governing body, necessarily have, to a greater or less extent, a discretion as to the manner in which the power shall be used." 1 Dillon on Mun. Corp., sec. 94 (4th ed.) See *Beattie* v. *Andrew County*, 56 Mo. 42. *Evansville, &c., R. Co.* v. *The City of Evansville*, 15 Ind. 395, 411.

We are of opinion, therefore, that the order appealed from was erroneous, and should be reversed, and this court will enter such order as the Circuit Court ought to have entered.

*Reversed.*