## BRILL v. W. B. FOSHAY CO. et al.

### No. 9650.

Circuit Court of Appeals, Eighth Circuit.

May 15, 1933.

Josiah E. Brill, of Minneapolis, Minn. (Mortimer H. Boutelle, of Minneapolis, Minn., on the brief), for appellant.

M. B. Mitchell, of Minneapolis, Minn., for appellees W. B. Foshay Co., and C. J. Rockwood as receiver thereof.

Clark R. Fletcher, of Minneapolis, Minn. (Leland S. Duxbury and Junell, Driscoll, Fletcher, Dorsey & Barker, all of Minneapolis, Minn., on the brief), for appellees Public Utilities Consolidated Corporation, and Joseph Chapman, receiver thereof.

Before STONE, KENYON, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

On November 1, 1929, in a suit brought by a judgment creditor against appellee W. B. Foshay Company, a Delaware corporation, in the District Court of the United States for the District of Minnesota, a receiver of the assets of said company was appointed, and in the same court and on the same date, in a similar suit brought against appellee Public Utilities Consolidated Corporation, a receiver of the assets of that company was likewise appointed. The receiver so appointed in each suit duly qualified and went into possession of and took over all the property and assets of said companies, and has since said time administered the same and the affairs of said respective corporations under the direction of the appointing court. Thereafter, in a suit brought in the district court of Hennepin county, Minn., by a simple contract creditor, the appellant, Josiah E. Brill, was appointed receiver of the assets of the Foshay Investors' Corporation, a Minnesota corporation, and he thereafter duly qualified.

In January, 1931, appellant brought this suit against the appellees, asking for an accounting between himself as receiver, and the receiver of the W. B. Foshay Company, a Delaware corporation, for the purpose of determining what, if any, property said receiver had at the time of his appointment, and asking that the claim of plaintiff for the payment of the debts of the estate, of which he was receiver, be made a specific lien and charge on said assets, and that such assets, or the proceeds thereof, be delivered over to plaintiff for administration, or the proceeds thereof be paid over to be applied on account of the claims of the estate of which plaintiff was receiver, and that such balance, if any, of the amount of the claims as could not be collected out of the assets in the hands of the receiver of the W. B. Foshay Company

be allowed as a claim against the estate of the receiver of the appellee Public Utilities Consolidated Corporation; that other creditors, if any, who were similarly situated with plaintiff, be permitted the same or similar relief upon proper and equitable terms; and that plaintiff be allowed such other and further relief as might be just and equitable. The matter was referred to a master, who in due time made report to the court, and based thereon the court entered decree, dismissing appellant's bill of complaint on its merits, from which decree this appeal is perfected.

As a matter of convenience, and to avoid confusion, the Foshay Investors' Corporation, for which appellant was appointed receiver, will be referred to as the Minnesota company, and the appellee W. B. Foshay Company will be referred to as the Delaware company, and the appellant will be referred to as plaintiff.

The evidence is not before us, but the case has been presented upon the findings of the master, which were adopted and approved by the court.

The Foshay Investors' Corporation is a Minnesota corporation, and was organized in the year 1917. It was engaged in the business of selling securities to the public, and in selling its own stock. In selling its own stock it encountered the obstacle that a double liability was by the Constitution of Minnesota imposed upon stockholders. To avoid this the officers in control of the management of the Minnesota company, about April 30, 1928, caused the Delaware company to be organized to take over the assets and succeed to the business of the Minnesota company. The Delaware company, having been authorized so to do by the Minnesota Securities Commission, proceeded to exchange its stock with the stockholders of the Minnesota company for their stock of the same classes in the Minnesota company, share for share, and by December, 1928, the Delaware company had acquired and owned a majority of the stock of the Minnesota company. On December 21, 1928, at a meeting of the stockholders of the Minnesota company a plan of reorganization was approved by which all the assets of the Minnesota company were to be transferred to the Delaware company in exchange for an amount of stock "equal at fair value to the fair net worth of said assets," such stock to be held by the Minnesota company for distribution among its stockholders other than the Delaware company, on a share for share basis. The directors of the Minnesota company were authorized to consummate such re-

organization, and on December 31, 1928, the respective boards of directors of these two Foshay companies approved the plan of reorganization and authorized their respective officers to consummate it. On the same date, the Minnesota company, by a written instrument dated on that day, deeded and transferred all its assets and property to the Delaware company, in consideration of the stock in the Delaware company issued to it. The Delaware company did not by said instrument expressly assume the debts of the Minnesota company, but by the terms of the instrument of transfer, the assets and properties were transferred "subject to and charged with, however, the prompt and punctual payment when and as due of all the liabilities of the grantor as shown by its books and records as of the close of business on December 31, 1928, and also its liabilities for Federal corporation income tax for the year 1928, together with all liabilities of the grantor incurred on or before December 31, 1928 in the regular and ordinary course of its business, whether reflected on its books and records or not at the date of this instrument." This instrument was not recorded prior to December 20, 1929, when it was recorded in Travis county, Tex., but in no other place.

In addition to this instrument of transfer, separate deeds were made by the Minnesota company to the Delaware company of many pieces of real estate, and these deeds were duly recorded. As to other parcels of real estate owned by the Minnesota company no deeds were ever made, and at the date of the receivership the title thereto stood of record in the name of the Minnesota company. Other parcels of real estate, while owned by the Minnesota company, stood in the name of an officer of both the Minnesota and Delaware companies.

The master found, and the court approved the finding that: "No actual intent existed on the part of Foshay Minnesota, or its officers, directors, or agents, or on the part of Foshay Delaware, or its officers, directors or agents, to hinder, delay or defraud the creditors of Foshay Minnesota by such transfer."

The Delaware company thereupon took over the business of the Minnesota company. It had the same officers and directors, and occupied the same quarters as those formerly occupied by the Minnesota company. The stockholders of the two companies were largely the same. The Delaware company took physical possession of all the assets of the Minnesota company of which the Minnesota company had physical possession. As to the properties of the Minnesota company not physically in its possession, the Delaware company took possession to the same extent as the Minnesota company previously possessed. The Delaware company did not segregate nor differentiate between the properties transferred to it by the Minnesota company and its own property derived from other sources, but from the time it took over the assets of the Minnesota company to the appointment of a receiver, it dealt with, handled, sold, and disposed of them indiscriminately, using them and the proceeds thereof and its own funds and property indiscriminately for the purpose of paying its own debts and the debts of Foshay Minnesota, and for other corporate purposes. To all outward appearances there was no change in the operation or methods of doing business after the reorganization, and no attempt was made to notify the public or creditors generally of either company of the reorganization, and very few of the creditors of the Minnesota company, with the exception of the Public Utilities Consolidated Corporation, had any knowledge of the transfer, and very few of the creditors of the Delaware company had any knowledge of the transfer, or of the terms of the transfer purporting to charge the assets transferred with the debts of the Minnesota company.

The Delaware company opened new books, in which it set up as assets all the assets carried on the books of the Minnesota company at the same value as they were carried by the Minnesota company, and in these books the Delaware company also set up as its own liabilities all the liabilities of the Minnesota company, as well as its own liabilities contracted from time to time. It made no distinction between its own debts and the debts of the Minnesota company, but dealt with, paid, or renewed them indiscriminately as they became due, without reference to whose debts they originally were. At the time of the appointment of the receiver for the Delaware company, it had settled, either in cash or by notes, all the debts of the Minnesota company which had become due up to that time, except debts aggregating $20,320.30. All of these facts were known to the Minnesota company, and its officers and directors, all of whom acquiesced in and consented to the acts and doings of the Delaware company.

The master found as a fact, or concluded as a matter of law, or both, that the Delaware company was in essence but the continuation of the activities and interests of the Minnesota company, which retained its franchise as a corporation, thus becoming prac-

tically extinct as an active entity, although not formally dissolved, and that the majority of the stock of the Minnesota company entitled to vote, and a majority of the stock of the Delaware company entitled to vote, was either owned or controlled by W. B. Foshay and H. H. Henley, and through such control they directed and entirely dominated the affairs of both companies, as well as the affairs of the Public Utilities Consolidated Corporation.

The fair value of the assets owned by the Minnesota company and transferred to the Delaware company was less than $4,500,000, and the Minnesota company had, immediately prior to this transfer, debts and liabilities substantially greater than its assets, and was in fact insolvent, though it had been able to meet its obligations as they matured. Between December 31, 1928, and October 31, 1929, the Delaware company paid debts of the Minnesota company as they matured, either in cash or by giving renewal notes of the Delaware company, in an amount aggregating $5,000,000. The master was unable to determine from the evidence what portion of this amount was paid in cash and what portion by renewal notes. In addition to these payments and settlements, the Delaware company settled liabilities of the Minnesota company without the payment of any cash or the giving of any notes, aggregating $1,200,000. At the time of the appointment of receiver for the Delaware company, the Minnesota company still had outstanding debts and liabilities in a substantial amount which had not been paid but which were in existence at the date it transferred its property to the Delaware company, the master being unable to determine from the evidence the amount of such liabilities.

In our view of the case it will not be necessary to go into the details of the relief sought against the Public Utilities Consolidated Corporation. To do so would tend to confuse, rather than clarify, the issues.

The appellant contends that: (1) The transfer from the Minnesota company to the Delaware company was fraudulent and that the court was required to establish an equitable lien thereon in favor of the creditors of the Minnesota company; (2) that even if the so-called reorganization of December 31, 1928, was in substance a "mere continuation of Foshay Minnesota," nevertheless it was a fraudulent conveyance; and (3) that the transfer was made with the intent and purpose of hindering, delaying or defrauding the then existing creditors of the Minnesota company.

Plaintiff's right to relief is predicated on the Minnesota statutes. Section 8478, Mason's Minnesota Statutes for 1927, reads as follows: "Every conveyance made * * * by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made * * * without a fair consideration."

Section 8481 provides that: "Every conveyance made * * * with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

A conveyance of property even though fraudulent as to creditors is good as between the parties, and all statutes affecting such conveyances are for the protection of creditors or subsequent purchasers. But even a creditor cannot impeach such a transfer unless it appears that he has been injured thereby.

Obviously it is the province of a court of equity to afford relief for a wrong inflicted, and not to bestow bounties. The plaintiff in this case is seeking the aid of a court of equity to enable the creditors of the Minnesota company to have the assets in the hands of the receivers for the defendant companies applied to the payment of those debts, to the exclusion of the creditors of the Delaware company. There was no intent to defraud, hinder, or delay the creditors of the Minnesota company by the conveyance from that company to the Delaware company, and if that transfer were fraudulent the fraud was constructive rather than actual. We are warranted in saying that the creditors of each corporation are equally blameless and innocent. The creditors of the Delaware company became such after this transfer and during the time that the Delaware company at least had the insignia of title to all the property involved. Subsequent to the time of the transfer and reorganization the creditors of the Minnesota company received from the assets payments of a large amount of their debts. The property was not depleted, nor was its value depreciated by the transfer from the Minnesota company to the Delaware company. Not only have the Minnesota creditors been recognized on an equality with the Delaware creditors by the Delaware company, but they have been recognized as having equal standing with the creditors of the Delaware company by the receivers and by the lower court, and if the relief demanded by plaintiff be granted, then the Minnesota creditors will be in vastly better condition

than if the conveyance had not been made, because the payment of creditors of the Minnesota company by the Delaware company has reduced pro tanto the claims that may be made in the receivership proceedings of the Minnesota company, so that the unpaid creditors of the Minnesota company would divide among themselves the transferred assets, free and clear of the claims of the paid creditors of the Minnesota company, and likewise free and clear of the claims of all the creditors of the Delaware company.

In the final analysis, it is clear that the aid of a court of equity is sought to improve the condition of the Minnesota creditors, and not to redress any injury or wrong that has been done them. On the other hand, should the court grant the prayer of plaintiff, an injury and injustice will result to the creditors of the Delaware company. It is, however, urged that the Minnesota statute contains no exceptions, and hence, based upon the letter of the statute, regardless of the equities involved, plaintiff is entitled to have the transfer set aside and the property devoted to the payment of the debts of the Minnesota company in preference to or exclusion of the creditors of the Delaware company. To so hold would be so inequitable and harsh as to shock the conscience of the chancellor, and we cannot accede to this contention. Equity will not lend its aid to one whose sole ground for seeking such aid is based upon a technicality. Only a part of the property transferred had a situs in the state of Minnesota. State laws do not constitute a rule of decision in federal courts of equity. The equitable jurisdiction of federal courts is that which was exercised by the High Court of Chancery in England at the time of the adoption of the Constitution, and the passage of the original Judiciary Act, unless subsequently changed or enlarged by act of Congress. This jurisdiction is administered uniformly throughout all the states, and furnishes one and the same rule of decision for federal courts of equity, and state laws do not ordinarily constitute a rule of decision binding on federal courts of equity. Hollins v. Brierfield Coal, etc., Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 37 L. Ed. 804; Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358; Smith v. Ft. Scott, etc., R. Co., 99 U. S. 398, 25 L. Ed. 437; Neves v. Scott, 13 How. 268, 14 L. Ed. 140; Harrison v. Farmers' L. & T. Co. (C. C. A. 5) 94 F. 728; Hall v. Gambrill (C. C. A. 4) 92 F. 32. Where the application of a state statute to the facts of a case will violate the fundamental principles of equity, a federal court of equity should not enforce the letter of such a statute.

The lower court has found that the Delaware company was in effect a continuation of the Minnesota company. Whether as a matter of law this is strictly accurate or not, we need not determine. Nor need we determine whether as a matter of law the transfer might still be constructively fraudulent even though the Delaware company were a mere continuation of the Minnesota company. So far as the equities of the parties involved in this case are concerned, the reorganized company may properly be considered as a continuation of the Minnesota company. Certainly, there are no superior equities in favor of the Minnesota creditors, and it is axiomatic that in the absence of relations or conditions requiring a different result, equity will treat all members of a class as upon an equal footing, and will distribute benefits either equally or in proportion to the several interests, and without preferences. Glover v. Patten, 165 U. S. 394, 17 S. Ct. 411, 41 L. Ed. 760; International Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Sutherland v. Mayer, 271 U. S. 272, 46 S. Ct. 538, 542, 70 L. Ed. 943; United States Rubber Co. v. American Oak Leather Co., 181 U. S. 434, 21 S. Ct. 670, 677, 45 L. Ed. 938; In re Fixen (C. C. A 9) 102 F. 295, 50 L. R. A. 605; Century Indemnity Co. v. Kofsky, 115 Conn. 193, 161 A. 101; Morris, Mather & Co. v. Port of Astoria (Or.) 15 P.(2d) 385.

In Sutherland v. Mayer, supra, the Supreme Court had before it a suit brought by the Alien Property Custodian for an accounting of assets, part in the United States and part in Germany, which appertained to a partnership between a citizen of the United States and certain citizens of Germany existing at the time of the declaration of war. It was claimed that the losses resulting from the war should be borne alone by the German partners. In rejecting this contention, the court, in an opinion by Mr. Justice Sutherland, said inter alia: "In whatever aspect the case is viewed or upon whatever basis the liability of the German partners be made to rest, the loss, in the final analysis, was an ineluctable consequence of the war. Is it to be borne by them alone or to be shared equally by all the partners as a common misfortune beyond the power of any of them to turn aside? That question justly cannot be solved by a strict enforcement of the ordinary rule as in ordinary cases, for here we are dealing

with extraordinary and anomalous conditions, as a result of which money values were swept away by immense causes as much beyond the sway of the German partners as of Mayer. Blame for such a situation rests upon neither; and equality is equity."

In United States Rubber Co. v. American Oak Leather Company, supra, a conveyance was attacked as constituting a fraudulent preference of creditors of an insolvent corporation. There was there, as in the instant case, a contest between two sets of creditors. The court points out a distinction between the case of a fraud involving a scheme to enforce a false or pretended indebtedness, so as to remove the assets of an alleged debtor from the reach of its bona fide creditor, and the case of an attempt of the bona fide creditor to secure preferences by using methods forbidden by statute or by the policy of law. The court said:

"In the former case, undoubtedly, a court of equity will refuse to permit the guilty parties to derive any profit or advantage from the fraudulent arrangement. In the latter case a court of equity will not declare a forfeiture of just debts, or, by postponing them till all other creditors are satisfied, practically confiscate them, but will, while defeating the attempt to obtain a forbidden preference, leave such creditors to use and enjoy the same rights and remedies possessed by other creditors.

"We think the present case is one in which the fundamental rule, that equality is equity, may properly be applied, and that will result in avoiding the attempted preferences and in permitting all the creditors to share ratably in the distribution of the fund in the hands of the receiver."

The creditors here, in so far as any actual intent to defraud, hinder, or delay creditors is concerned, were equally innocent and blameless. Prior to the appointment of receivers for the defendants, the Minnesota creditors took no steps whatever to attack the transfer. Their claims were not reduced to judgment, and they had acquired no liens. They were in position to have taken some such action, while the Delaware creditors could not have done so. It is quite generally held that innocent creditors of a fraudulent grantee, who have acquired a lien and levied on property before any steps have been taken by the creditors of the fraudulent grantor, will hold the property as against such other creditors, though not as against prior lien creditors of the original grantor. Here a receiver was first appointed for the Delaware company, who took actual possession of all the property of that company, and brought them into a court of equity at the instance of the creditors of the Delaware company, and it is urged that the appointment of a receiver and the seizure of all the transferred assets should preclude the creditors of the Minnesota company from now asserting any right to a lien on these assets, at least superior to the rights of other creditors. T. L. Smith Co. v. Orr (C. C. A. 8) 224 F. 71; Empire Lighting Fixture Co., Inc., v. Practical Lighting Fixture Co., Inc. (C. C. A. 2) 20 F.(2d) 295; Applegate v. Applegate, 107 Iowa, 312, 78 N. W. 34.

We are not called upon to determine whether the appointment of a receiver in the circumstances presented in this case was tantamount to a levy of execution or an attachment upon this property, as that question is not before us.

Treating both sets of creditors as of the same class, and applying the rule that equality is equity, was at least fair to the Minnesota creditors.

We have carefully considered all the contentions so ably presented by counsel on either side of this controversy; but in the view we have taken, we pretermit further discussion of these contentions.

The judgment appealed from is, therefore, affirmed.